## WILSON v. GAINES.

1. A party who, under proceedings to enforce the statutory lien of the State of Tennessee, purchases a railroad does not acquire therewith the immunity from taxation thereon which the railroad company possessed.

2. Where the case stands on demurrer to his bill, which prays that the collection of taxes on the property be restrained, and avers that the sale was under those proceedings, this court will not, in the absence of a particular allegation to the contrary, presume that the sale embraced anything not covered by that lien.

3. *Morgan* v. *Louisiana* (93 U. S. 217) cited and approved.

ERROR to the Supreme Court of the State of Tennessee.

The facts are stated in the opinion of the court.

*Mr. Edward Baxter*, for the plaintiff in error.

No counsel appeared for the defendant in error.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This was a bill in equity filed in the Chancery Court of Nashville, Tenn., to enjoin the collection of taxes upon that part of the railroad of the St. Louis and Southwestern Railway Company which was originally owned by the Edgefield and Kentucky Railroad Company. The facts are these:—

On the 11th of December, 1845, the General Assembly of

Tennessee chartered the Nashville and Chattanooga Railroad Company for the purpose of building a railroad from Nashville to Chattanooga. The thirty-eighth section of that charter is as follows : —

" The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer."

On the 1st of January, 1852, the Nashville and Southern Railroad Company was incorporated to construct another line of road, and was to " have all the rights, powers, and privileges, and be subject to all the liabilities and restrictions, prescribed in the charter of the Nashville and Chattanooga Railroad Company," with a single exception, which is unimportant for any of the purposes of this case.

On the 13th of February, 1852, the Edgefield and Kentucky Railroad Company was incorporated to build a road from Nashville to the Kentucky State line, with the following as the sixth section of its charter : —

" That the company hereby incorporated is invested, for the purpose of making and using said road, with all the powers, rights, and privileges, and subject to all the liabilities and restrictions, that are conferred and imposed on the Nashville and Chattanooga Railroad Company by an act passed on the 11th of December, 1845, so far as the same are not inconsistent with the provisions of this act."

By an act of the General Assembly of the State passed Feb. 11, 1852, entitled " An Act to establish a system of internal improvement in this State," the governor was authorized to issue under circumstances therein mentioned to certain railroad companies the bonds of the State for the purpose of aiding in the completion of their respective roads; and it was further provided that upon such issue and the completion of the road the State should " be invested with a lien, without a deed from the company, upon the entire road, including the stock, right of way, grading, bridges, masonry, iron rails, spikes, chairs, and the whole superstructure and equipments, and all the property

owned by the company as incident to, or necessary for, its business, and all depots and depot stations, for the payment of all said bonds issued to said company as provided in this act, and for the interest accruing on said bonds." Acts of 1851–52, c. 151, sects. 1, 4, pp. 204–206. On the 8th of February, 1854, the privileges of this act were extended to the Edgefield and Kentucky Railroad Company. Acts of 1853–54, c. 131, sect. 1, p. 205.

Afterwards, on the 15th of December, 1855, the charter of the Edgefield and Kentucky company was amended, and the following is sect. 2 of that amendment: —

" That the said company shall be entitled to all the rights and privileges that were conferred upon the Nashville and Southern Railroad Company, by an act of the General Assembly of the State of Tennessee, passed Jan. 1, 1852, entitled ' An Act to charter the Nashville and Southern Railroad Company.' "

The company availed itself of the privileges of the internal improvement act, and subjected its property to the statutory lien therein provided for.

Default having been made by many of the railroad companies in meeting their obligations for the bonds of the State issued to them, several attempts were made to enforce the liens on some of the roads without success, and on the 22d of December, 1870, the legislature passed an act, sections 1 and 10 of which are as follows: —

" SECT. 1. That a bill shall be immediately filed in the Chancery Court at Nashville in the name and behalf of the State, to which all the delinquent companies, the respective stockholders, holders of the bonds, creditors, and all persons interested in the said several roads, shall be made parties defendant, and shall be brought before the court in the mode prescribed by the rules of practice in chancery established in the State, except as otherwise herein provided. And said court is hereby invested with exclusive jurisdiction to hear, adjudicate, and determine all questions of law and matters of controversy of whatever nature, whether of law or of fact, that have arisen or that may arise touching the rights and interest of the State, and also of the stockholders, bondholders, creditors, and others in said roads; and to make all such rules, orders, and decrees, interlocutory and final, as may be deemed necessary in

order to a final and proper adjustment of the rights of all the parties, preliminary to a sale of the interest of the State in said road. Also to declare the exact amount of indebtedness of each of said companies to the State; and likewise to define, as may be thought proper, what shall be the rights, duties, and liabilities of a purchaser of the State's interest in said roads, or either of them, and what shall be the reserved rights of said companies, stockholders, and others respectively, as against said purchasers after such sale, under the existing laws of this State."

" SECT. 10. That upon the sale of any of the franchises of either of the railroad companies by the commissioners under the provisions of this act, all the rights, privileges, and immunities appertaining to the franchise so sold under its act of incorporation and the amendments thereto, and the general improvement law of the State and acts amendatory thereof, shall be transferred to and vest in such purchaser, and the purchaser shall hold said franchise subject to all liens and liabilities in favor of the State, as now provided by law against the railroad companies."

The Edgefield and Kentucky company was one of the companies in default, and it is averred in the present bill that, " under a bill filed to foreclose the State's statutory lien upon the road and superstructure, equipments and stock, and the property owned by the company as incident to or necessary for its business, &c., . . . the road, its franchises, property, rights, privileges, immunities, &c., were sold," and the St. Louis and Southwestern company by sundry mesne conveyances was invested with the title. It is now contended that, under these circumstances, the road of the Edgefield and Kentucky company, in the hands of the St. Louis and Southwestern, *is* exempt from taxation until the expiration of twenty years from its completion. The Supreme Court of the State dismissed the bill, holding that the exemption from taxation which was granted to the Nashville and Chattanooga company was not one of the privileges of that company which passed to the Edgefield and Kentucky company, either by its original or amended charter. To reverse that decree the case has been brought here by writ of error.

In the view we take of this case, it is unnecessary to determine the question on which the decision seems to have turned in

the court below, for, as we think, it has not been shown that if the property in the hands of the original company was exempt from taxation, that exemption passed to the purchasers at the sale to foreclose the State's statutory lien under which the complainant claims.   In *Morgan* v. *Louisiana* (93 U. S. 217) we distinctly held that immunity from taxation was a personal privilege and not transferable, except with the consent or under the authority of the legislature which granted the exemption, or some succeeding legislature, and that such an exemption does not necessarily attach to or run with the property after it passes from the owner in whose favor the exemption was granted.   In that case the property in the hands of the original company was exempt from taxation.   The company mortgaged its property and franchises, and under that mortgage the property and franchises were sold, pursuant to the terms of a judicial decree ; but we held that by such a sale only such franchises passed as were necessary to the operation of the company, and without which its road and works would be of little value, and that consequently the property in the hands of the purchasers was subject to taxation.

In the present case the lien of the State was put by the statute only on the property of the company.   It did not even in express terms include the franchises which were necessary to the operation of the road.   Under such circumstances, if there were nothing more, it would seem to be clear beyond all question that a sale under the lien would not necessarily carry with it any immunity from taxation which the property enjoyed in the hands of the original company.

But it is contended that, as the case stands on demurrer to a bill which contains the distinct averment that " the road, its franchises, property, rights, privileges, immunities," &c., were sold, it must be assumed as an admitted fact that any immunity from taxation which the old company had, passed to the purchasers and their grantees.   This averment must be taken in connection with the further equally distinct statement in the bill that the sale took place under proceedings instituted in the Chancery Court of Nashville " to foreclose the State's statutory lien," and as that lien was confined to the " property owned by the company, or incident to, or necessary for, its

business," we will not, in the absence of a particular and positive allegation to the contrary, presume that more was sold than the lien covered. Mere general words of description are not sufficient to extend a sale beyond the subject-matter of the lien, as defined by the statute which lies at the foundation of the entire proceeding.

We are told that a contrary doctrine is established by the case of *The Knoxville and Ohio Railroad Company* v. *Hicks*, decided by the Supreme Court of Tennessee at the September Term, 1877, and not yet reported, so far as we are advised, in any of the volumes of the regular series of the reports of the court. We do not so understand that case. There it was " distinctly adjudged," by the Chancery Court of Nashville in the proceedings to enforce the statutory lien under which the sale was made, " that not only the property of the old company, but all its rights, franchises, privileges, and immunities, as defined by the charter and laws, and the decree in the cause, passed to and vested in the new company," which was the purchaser. Nothing of the kind is found in this case. It is nowhere stated what the decree of the court was, but only what was sold; and inasmuch as the jurisdiction of the court was, by the terms of the act of 1870, expressly confined to an adjudication of matters of controversy " touching the rights and interest of the State, and also of stockholders, bondholders, creditors, and others in said roads," and to defining " what shall be the rights, duties, and liabilities of a purchaser of the State's interest in said roads, . . . and what shall be the reserved rights of said companies, stockholders, and others respectively, as against such purchasers after such sale, under the existing laws of the State," it would be against all the settled rules of construction to hold, upon the face of the statute alone, that more was sold than the lien to be adjudicated upon implied.

We are all of opinion, therefore, without deciding whether the property in the hands of the Edgefield and Kentucky Company was exempt, that the decree below dismissing the bill should be affirmed; and it is

*So ordered.*