## GULF AND SHIP ISLAND RAILROAD COMPANY *v.* HEWES.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 5. Argued October 15, 16, 1901.—Decided November 18, 1901.

Although the certificate of the chief justice of a state supreme court that a Federal question was raised is insufficient to give this court jurisdiction, where such question does not appear in the record, it may be resorted to, in the absence of an opinion, to show that a Federal question, which is otherwise raised in the record, was actually passed upon by the court.

A charter of a railroad company incorporated by an act of the legislature of Mississippi, passed in 1882, contained an exemption from all taxation for twenty years. The state constitution adopted in 1869 provided that the property of all corporations for pecuniary profit, should be subject to taxation, the same as that of individuals, and that taxation should be equal and uniform throughout the State. Prior to the incorporation of the railroad company, the supreme court of the State had construed this provision of the constitution as authorizing exemptions from taxation, but had declared that such exemptions were repealable. *Held*, That this court was bound by this construction of the constitution, and, therefore, that the railroad company could not claim an irrepealable exemption in its charter. *Held*, also, That the exemption being repealable, the question whether it had in fact been repealed was a local and not a Federal question.

A ruling of a state supreme court that a repealable exemption has been in

fact repealed by a subsequent statute, is one which turns upon the construction of a state law, and is not reviewable here, although if the exemption were irrepealable and thus constituted a contract, it would be the duty of this court to decide for itself whether the subsequent act did repeal it or impair its obligation.

A privilege tax upon a railroad corporation is a tax upon property.

THIS was a bill in equity filed in the court of chancery of Harrison County, Mississippi, by the railroad company, against the tax collector of that county to enjoin the collection of certain property and privilege taxes assessed against the railroad company for the fiscal year 1896.

The bill averred in substance the incorporation of the railroad company by an act of the legislature of the State of Mississippi, approved February 23, 1882, c. 542, p. 849, the eighteenth section of which act declared: "That said company, its stock, its railroads and appurtenances and all its property in this State, necessary or incident to the full exercise of all powers herein granted, shall be exempt from taxation for a term of twenty years from the passage of this act;" that immediately thereafter the corporation entered upon the construction of its road, and at the time of the filing of the bill had about seventy-five miles in operation; that, notwithstanding this charter exemption, the State Railroad Commission has returned its property for taxation, and that defendant has demanded not only a privilege tax, but a property tax levied for state and county purposes, and threatens seizure of its property. Wherefore an injunction was prayed.

To this bill, defendant interposed a demurrer for want of equity, and because the exemption was a mere bounty, repealable at the pleasure of the legislature, and void of any element of contract. The demurrer was sustained, and leave granted the plaintiff to amend its bill. Thereupon it filed an amendment alleging that the exemption in the charter constituted a contract between the plaintiff and the State; that the railroad was constructed upon the faith of such contract, and that it was not within the power of the State to repeal the exemption, and invoking in that connection the contract clause of the Constitution. Defendant again demurred. The demurrer was sustained,

and an appeal granted to the Supreme Court of the State, which affirmed the decree of the court below. Whereupon plaintiff sued out a writ of error from this court, which defendant moved to dismiss.

*Mr. Eaton J. Bowers* and *Mr. Edward Mayes* for plaintiffs in error.

*Mr. R. C. Beckett* for defendant in error. *Mr. Frank A. Critz* was on his brief.

Mr. Justice Brown, after making the above statement, delivered the opinion of the court.

1. The motion to dismiss must be overruled. Counsel for the railroad company appear to have invoked the contract clause of the Constitution upon the original argument; but whether this be so or not, the bill was subsequently amended under leave of the court, by averring that the charter and the exemption from taxation contained in the eighteenth section constituted a contract between the plaintiff corporation and the State of Mississippi that the State would not demand any taxes upon its capital, property or stock for the term of twenty years from the enactment of the charter; and that, if said exemption from taxation had been repealed, which the company denied, it was not within the power of the State to repeal such exemption for the reason that the same constituted a contract upon which the company had acted, and upon the faith of which it had constructed the road; and that such repeal was a violation of the contract clause of the Constitution The Federal question was properly raised, and there is at least sufficient color for it to sustain our jurisdiction. No opinion was delivered by the Supreme Court, but the Chief Justice certifies that the validity of the state legislation subsequent to the charter of 1882 was drawn in question upon the ground of its impairment of the contract contained in such charter, and that the decision was in favor of the validity of such legislation. While such a certificate is insufficient to give us jurisdiction, where

such jurisdiction does not appear in the record, it may be resorted to, in the absence of an opinion, to show that a Federal question which was otherwise raised in the record, was actually passed upon by the court. *Armstrong* v. *Athens County Treasurer*, 16 Pet. 281; *Yazoo & Mississippi Railroad* v. *Adams*, 180 U. S. 41, 48; *Railroad Co.* v. *Rock*, 4 Wall. 177; *Parmelee* v. *Lawrence*, 11 Wall. 36; *Gross* v. *U. S. Mortgage Co.*, 108 U. S. 477.

2. The bill set out, and, until the argument in this court, the plaintiff company relied solely upon, a charter granted February 23, 1882, by the legislature of Mississippi to incorporate the Gulf and Ship Island Railroad Company, the eighteenth section of which declared : " That in order to encourage the investment of capital in the works which said Company is hereby authorized to construct and maintain, and to make certain in advance of such investment, and as an inducement and consideration therefor, the taxes and burdens which this State will and will not impose thereon, it is hereby declared that said Company, its stock, its railroad, and appurtenances, and all its property in the State necessary or incident to the full exercise of all the powers herein granted, shall be exempt from taxation for a term of twenty years from the passage of this Act."

To strengthen its position, and to enable the company to rally to its support an exemption antedating the constitution of 1869, upon which the defendant relies, the plaintiff calls to our attention an act passed in 1850 to incorporate the Gulf and Ship Island Railroad Company, and a further act approved March 1, 1854, c. 66, amendatory of that act, the eleventh section of which declares " that the property and investments of the Company connected with this enterprise, within this State, shall not be subject to taxation until the road shall be in full operation and completed."

The position of the plaintiff in this connection is that, prior to the Code of 1857, there was no general law and no constitutional provision in any way restraining the legislature from granting irrepealable exemptions, and that the charter of 1882 was a mere continuance of the original charter of 1850-1854; that the construction of the road, authorized by that charter

had never been abandoned, and that so late as 1872 the legislature had adopted a memorial to Congress praying that a land grant made by Congress in 1858 for the benefit of the Gulf and Ship Island Railroad Company, and which had lapsed to the United States by the intervention of the Civil War, might be revived in favor of that railroad.

But we are of opinion that the charter of 1882 cannot be considered as a revival or continuation of the charter of 1854, since the names of the incorporators are entirely different, the routes of the two railroads are also different, and no reference is made in the charter of 1882 to the prior charters, although the names of the two corporations are identical. There is nothing in the act of 1882 to indicate even the existence of a prior act incorporating a road under the same name. It is true that, at the same session of the legislature (1882), another memorial to Congress was adopted by the legislature for a revival of the grant of public lands made by the United States in 1856 to aid in the construction of the Gulf and Ship Island Railroad, but in this very memorial it was stated that " at its present session our legislature has granted *a new act of incorporation* with liberal provisions, thus again attesting the abiding and earnest interest felt by our people in this important work."

It is also true that on March 13, 1884, the legislature passed another act to facilitate the construction of the Gulf and Ship Island Railroad, and for other purposes, c. 612, p. 971, the eighth section of which declared: " That said Gulf and Ship Island Railroad Company are hereby subrogated to all the rights and privileges heretofore granted by the State of Mississippi to the Gulf and Ship Island Railroad Company, and shall have the right to use and enjoy such field notes, maps and surveys as have been heretofore made in the interest of said road as were authorized and granted by the State under the acts approved March 2, 1854, and December 3, 1858." This is an effort to subrogate the new railroad to the rights and privileges of the former one, but its language contains an implied admission that, without such subrogation, the rights and privileges of the former company had lapsed, and that a new act was necessary to revive them. But if the act be considered as a

revival of the rights and privileges which had formerly belonged to the old company, such rights and privileges would be subordinated to the provisions of the new constitution of 1869, which in the meantime had been adopted. *Planters' Ins. Co.* v. *Tennessee,* 161 U. S. 193, 198. In addition to all this, however, the better opinion is that a subrogation to the "rights and privileges" of a former corporation does not include an immunity from taxation. *Phœnix Ins. Co.* v. *Tennessee,* 161 U. S. 174.

We are unable to see that there is anything in this legislalation to indicate that the plaintiff company stands in a position to escape the application of the constitution of 1869. Indeed, it seems to us entirely clear that the injunction of the charter of 1850–1854 into this case was a mere afterthought; and that the charter upon which the plaintiff must rely is that of 1882, set forth in this bill, and that such charter must be construed in subordination to the constitution of 1869, which we now proceed to consider.

3. The only provisions of the constitution pertinent to this case are the following sections of Article XII:

"SEC. 13. The property of all corporations for pecuniary profit, shall be subject to taxation, the same as that of individuals."

"SEC. 20. Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

As it is not altogether clear from the language of these sections whether it was competent for the legislature to grant to a railroad company an exemption from taxation, it is conceded by both sides to this controversy that we are bound to look to the decisions of the Supreme Court of Mississippi at the time this charter was granted, for their proper interpretation. *Douglass* v. *County of Pike,* 101 U. S. 677. While the question of contract or no contract in a particular case is one which must be determined by ourselves, every such alleged contract is presumed to have been entered into upon the basis, and in contemplation of, the existing constitution and statutes, and upon the established construction theretofore put upon them by the highest judicial

authority of the State. *Taylor* v. *Ypsilanti*, 105 U. S. 60; *Wade* v. *Travis County*, 174 U. S. 499, 509, and cases cited.

We are referred to the case of *Mississippi Mills* v. *Cook*, 56 Mississippi, 40, decided in 1878, four years prior to this charter, as settling the proper construction of these sections of the constitution. Indeed, counsel stipulate that the stockholders invested their money in reliance upon this adjudication. The Mississippi Mills were chartered in 1871 for the purpose of manufacturing cotton and woolen fabrics, and in 1872 an act was passed, of which the Mississippi Mills were subsequently given the benefit, providing that all taxes upon the property of said company should be applied to the payment of debts which the company had incurred in the construction of their factory. In 1877 this act was so far amended as to be substantially repealed; and in 1878 the company filed a bill in chancery against the tax collector, setting up the acts of 1872 and 1873 as constituting a contract with the company, and alleging that the act of 1877 impaired the obligation of such contract, and was in violation of the Constitution of the United States.

The bill was held not to be maintainable, the court deciding:

(1.) That it was not intended by section 13 of article XII of the constitution to confer power on the legislature to tax the property of corporations, because that existed without this section as an inherent legislative power.

(2.) That the property of the corporations mentioned was declared to be *subject* to taxation, that is, liable to taxation, the same as that of individuals, but it was not necessarily to be *subjected* to taxation. Since overruled in *Adams* v. *Yazoo & Mississippi Valley Railroad*, 77 Mississippi, 194.

(3.) That any legislative act, " whether it be a charter or other form of law, which says it shall be exempt, and not subject to taxation, is in conflict with the constitution." But that the legislature might exempt property of a certain class, whether the owners were corporations or natural persons, but corporate property could never be placed beyond the reach of the taxing power. " It may not be taxed, but it must be ever liable. It need not be *subjected*, but it must always be *subject*, to taxation,

the same as that of individuals, for the constitution so declares. The provision is mandatory as to universal liability to be taxed, but permissive to the legislature to tax the property of such corporations, or exempt it, as it may see proper, in common with the property of individuals, which may be taxed or not for the time being." See also *Vicksburg Bank* v. *Worrell,* 67 Mississippi, 47; *Natchez, Jackson & Columbus Railroad Co.* v. *Lambert,* 70 Mississippi, 779.

(4.) That it followed from this that it was competent for the legislature to modify or repeal the act of 1872, and that the repealing act of 1877 was constitutional, and operated as a repeal of the exemption. This was reaffirmed in *Attala Co.* v. *Kelly,* 68 Mississippi, 40; *Railroad Co.* v. *Lambert,* 70 Mississippi, 779.

(5.) In a concurring opinion, delivered by the Chief Justice, he held that if the exemption were granted in the form of a contract in the charter, it was prohibited.

Although the decision of the case was put upon the ground that the exemption from taxation contained in the acts of 1872 and 1873 was a mere bounty, and subject to repeal by the legislature, the report would seem to indicate the opinion of the court to have been that no exemption was valid which was contained in the charter of a particular corporation; (a question not necessarily involved,) but whether this be so or not, it is entirely clear that the court intended to decide that, under the constitution of 1869, any exemption granted by the legislature was a mere bounty and subject to repeal.

Under this construction of the constitution it becomes unnecessary to decide whether the exemption contained in the charter of 1882 be void or not, since, as it appears by the certificate of the Chief Justice, the decision of the court below was put upon the ground that the subsequent legislation, and particularly the Annotated Code of 1892, which was construed by the court as repealing the exemption in the charter, was constitutional and valid. Indeed, counsel for the collector, in their brief, expressly disclaim any reliance upon the position that the exemption in this case was originally unconstitutional and void, putting their case expressly upon the ruling of the Supreme Court that such exemption had been repealed.

Holding then, as we do, that the exemption was subject to repeal, it only remains to consider whether the Code of 1892 did in fact repeal and abrogate it. In this connection the State relies upon section 3744 of the Annotated Code of 1892, which declares that "following property, *and no other*, shall be exempt from taxation, to wit." Here follows a list of some twenty classes of property, among which, however, railroads are *not* included. If an exemption under a special act be repealed by the words "and no other," contained in a general act declaring what property shall be exempt from taxation, it would follow that this exemption was repealed by the Code of 1892, and the principle applied in *Louisville Water Company* v. *Clark*, 143 U. S. 1, 11, would also be applicable here. The railroad company, however, insists that its rights are saved by section eight of the same code, which declares that "private and local laws not revised and brought into this Annotated Code are not affected by its adoption, unless it be expressly so provided herein." There being no such express provision in the code respecting the act of 1882, it is insisted that the exemption contained in that act is saved. The Supreme Court, however, seems to have held, as it had already done with respect to a similar section in the Code of 1880, *Adams·* v. *Railroad Co.*, 77 Mississippi, 194, 317, that the exemption was not saved.

We do not find it necessary to pass upon the soundness of this conclusion, as we are of opinion that the question whether the ruling of the Supreme Court, that a *repealable* exemption has been in fact repealed by a subsequent statute, is one which turns upon the construction of a state law, and is not reviewable here, although if the exemption were *irrepealable* and thus constituted a contract, it would be our duty to decide for ourselves whether the subsequent act had repealed it or impaired its obligation. The only contract relied upon is one exempting the property of a particular corporation from taxation for a certain number of years ; a contract which, in the light of the state constitution and the prior decisions of the state courts, must be read as if it contained a proviso that the legislature might in the meantime alter, amend or repeal the act. Hence, as the legislature is left entirely free to act upon the sub-

ject, no subsequent legislation could possibly impair the obligation of the contract, if such exemption can be called a contract at all.   If no statute *could* impair it, it goes without saying that none *did* impair it.   If, then, the decision of the Supreme Court that the legislature had in fact repealed the exemption was right, the railroad company cannot complain, since the legislature had done no more than it had a right to do.   If, upon the other hand, we should be of opinion that the Supreme Court was wrong in holding the exemption repealed, such exemption would be abrogated not by the act of 1892, but by an erroneous construction of that act.   Our only authority to review the action of the state courts in this class of cases under Rev. Stat. sec. 709, arises when the validity of a state *statute* is drawn in question on the ground of its being repugnant to the Constitution of the United States, and the decision is in favor of its validity.   Now, if the statute, adjudged to be valid, does not impair the obligation of any contract, it is not repugnant to the Constitution.   It is the fact that the act, as construed by the Supreme Court, impairs the obligation of a contract that gives us jurisdiction, and if there be in the act of 1882 no contract that can be impaired by subsequent legislation, it is of no consequence that the Supreme Court may have given it a wrong construction.   " Before we can be asked to determine whether a statute has impaired the obligation of a contract, it should appear that there was a legal contract subject to impairment, and some ground to believe that it has been impaired."   *New Orleans* v. *New Orleans Waterworks Co.,* 142 U. S. 79, 88.   Indeed the whole foundation of our jurisdiction in this class of cases must rest upon a *contract* which cannot be legally impaired.

This court has repeatedly held that we cannot revise the judgment of the highest court of a State unless, by its terms, or necessary operation, it gives effect to some provision of a state constitution or law which, as thus construed, impairs the obligation of a precedent contract.   In *Railroad Co.* v. *Rock,* 4 Wall. 177, 181, this court pronounced it a " fundamental error that this court can, as an appellate tribunal, reverse the judgment of a state court, because that court may hold a contract

to be void, which this court might hold to be valid." So, too, in *Knox* v. *Exchange Bank*, 12 Wall. 379, 383, it was said by Mr. Justice Miller: "But we are not authorized by the Judiciary Act to review the judgments of the state courts because their judgments refuse to give effect to valid contracts, or because those judgments, in their effect, impair the obligation of contracts. If we did, every case decided in a state court could be brought here, when the party setting up a contract alleged that the court had taken a different view of its obligation to that which he held." To the same effect are *Lehigh Water Co.* v. *Easton*, 121 U. S. 388, 392, and *New Orleans Waterworks* v. *Louisiana Sugar Co.*, 125 U. S. 18, 30. In the latter case it is said by Mr. Justice Gray: "In order to come within the provision of the Constitution of the United States which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." See also *Central Land Co.* v. *Laidley*, 159 U. S. 103, 109.

We are therefore of opinion that we cannot review the action of the state court in holding this exemption to have been repealed.

4. A single point with regard to the *privilege* taxes included in the assessment sought to be enjoined remains to be considered.

By section 18 of the company's charter of 1882 it was declared "that such Company, its stock, its railroad and appurtenances, and all its *property* in this State, necessary or incident to the full exercise of all the powers herein granted, shall be exempt from taxation for a term of twenty years from the passage of this act." This undoubtedly implies an exemption from privilege as well as *ad valorem* taxes, and such has been the construction given to it by the Supreme Court of Mississippi. *Grand Gulf and Port Gibson Railroad* v. *Buck*, 53 Mississippi, 246.

But, as we have already held, this section must be construed as subservient to section 13, article XII, of the constitution of

1869, providing that " the *property* of all corporations for pecuniary profit shall be subject to taxation."

Now, if privilege taxes are taxes upon the *property* of corporations, an exemption from such taxes was subject to repeal as much as we have already held an exemption of *ad valorem* taxes to be.

Whatever may have been the fluctuations of opinion upon this subject, and it is not to be denied that there are many cases in the state courts holding that a privilege tax is not a tax upon property, the law in this court, so far as concerns railway franchises, must be deemed to have been settled by the case of *Wilmington Railroad* v. *Reid*, 13 Wall. 264, in which an exemption in the charter of the Wilmington and Raleigh Railway Company of " the property of said company and the shares therein " from taxation, was decided to extend to a tax upon the franchise and rolling stock. In delivering the opinion of this court, Mr. Justice Davis observed : " It is insisted, however, that the tax on the franchise is something entirely distinct from the property of the corporation, and that the legislature, therefore, was not inhibited from taxing it. The position is equally unsound with the others taken in this case. Nothing is better settled than that the franchise of a private corporation—which in its application to a railroad is the privilege of running it and taking fare and freight—is property, and of the most valuable kind, as it cannot be taken for public use even without compensation. It is true it is not the same sort of property as the rolling stock, roadbed and depot grounds, but it is equally with them covered by the general term ' the property of the company,' and therefore equally within the protection of the charter." To the same effect are *Adams Express Co.* v. *Ohio*, 165 U. S. 195, and *Veazie Bank* v. *Fenno*, 8 Wall. 533, 547.

This also appears to be the law in Mississippi. *Coulson* v. *Harris*, 43 Mississippi, 728 ; *Drysdale* v. *Pradat*, 45 Mississippi, 445.

In *West River Bridge Co.* v. *Dix*, 6 How. 507, 534, the franchise of a bridge company was held to be property subject to condemnation under the law of eminent domain. See also *Monongahela Nav. Co.* v. *United States*, 148 U. S. 312 ; *Spring*

*Valley Waterworks* v. *Schottler*, 62 California, 110; *Nichols* v. *New Haven & Northampton Railroad*, 42 Connecticut, 103, 125; *Porter* v. *Rockford &c. R. R.*, 76 Illinois, 561, 574; *State* v. *Anderson*, 90 Wisconsin, 550, 561; *Richmond & Danville Railroad* v. *Brogden*, 74 N. C. 707.

It follows, then, that privilege taxes being taxes upon property are subject to the constitutional limitations of 1869, and their exemption was equally repealable as that of *ad valorem* taxes.

The railroad company also calls attention to section 181 of the constitution of 1890, by virtue of which "exemptions from taxation to which corporations are legally entitled at the adoption of this constitution, shall remain in full force and effect for the time of such exemptions as expressed in their respective charters, or by general laws, unless sooner repealed by the legislature." The words "sooner repealed" in this section apparently refer to a repeal before the expiration of the exemption under their respective charters, and as the Supreme Court has held that the exemption in this case was repealed by the Annotated Code of 1892 the company can gain no additional advantage by this section. *Adams* v. *Tombigbee Mills*, 78 Mississippi, 676.

Inasmuch as the statute in question could not, and in the opinion of Supreme Court did not, impair the obligation of any prior contract, its judgment must be

*Affirmed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of this case.