STATE v. CHICAGO GREAT WESTERN RAILWAY COMPANY.[1]

December 24, 1908.

Nos. 15,991—(46).

**Increase in Gross Earnings Tax.**

State v. Great Northern Ry. Co., infra, page 303, sustaining the validity of chapter 253, Laws 1903, increasing the gross earnings tax of railroad companies of the state to four per cent., followed and applied.

Action in the district court for Ramsey county to recover $24,979.-62, the unpaid balance due to the state from the defendant upon

[1] Reported in 119 N. W. 211.

its gross earnings for the year 1905 at the rate of four per cent. The answer set up that defendant was the successor of the Minnesota & Northwestern Railroad Company, which by section 2 of chapter 47, Laws of 1856, agreed to pay a two per cent. gross earnings tax, and that as to it the gross earnings tax law of 1903 impaired the obligation of contract between the state and the company. The history of legislation in reference to the predecessors of defendant is stated in the opinion. The case was tried before Hallam, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to this order, plaintiff appealed. Reversed and judgment ordered for the state.

*Edward T. Young,* Attorney General, *George W. Peterson,* Assistant Attorney General, and *O'Brien & Stone,* for appellant.

Until 1871, all laws of Minnesota providing for the taxation of railroad property on the gross earnings basis were unconstitutional. By the constitutional amendment of 1871 (article 4, § 32a) all such laws were validated subject to the reserved right of amendment or repeal. This is because of Const. art. 9, §§ 1, 3. A tonnage tax upon the product of mines is certainly no more objectionable to these sections than is the railroad gross earnings tax, and yet the tonnage tax was swept aside. State v. Lakeside Land Co., 71 Minn. 283, 286. Both the original invalidity of all such laws and their ratification by the constitutional amendment of 1871, with the reservation of the right to amend or repeal, is fully established by State v. Luther, 56 Minn. 156; State v. Stearns, 72 Minn. 200; State v. Duluth & I. R. R. Co., 77 Minn. 433.

Because it failed to build the road, or any part of it, until 1885, the charter of the Minnesota & Northwestern Company was not earned and did not become a contract until that year, and in so far as it then took on a contractual character, it was subject to the constitution as amended in 1871. The two per cent. gross earnings tax provision therefore was subject to amendment or repeal, if it had not been repealed already by the adoption of the constitution in 1858. If the charter is not earned by doing the things specified in the grant, it is abandoned. And if after the lapse of many years the corporate enterprise is proceeded with, by legislative permission, it

is in all respects subject to the laws then in existence. The exemption ceases whenever the owner ceases to use it for the special purpose in view when the exemption was granted. 12 Am. & Eng. Enc. (2d Ed.) 381, note 1. The effect of the state constitution was to withdraw the special form of taxation and it was perfectly competent for the state to do so at that time in view of the failure of the company to earn the same. A bare unexecuted power to consolidate with other corporations is not, so long as it continues unexecuted, a vested right protected from revocation by the legislature—at least so far as it applied to parallel or competing lines. Pearsall v. Great Northern R. Co., 161 U. S. 646. An unearned immunity from taxation is just as much subject to withdrawal as an unexecuted power to consolidate with a parallel line. The one is as much in derogation of common right and against public policy as the other. Planters' Ins. Co. v. Tennessee, 161 U. S. 193.

The two per cent. gross earnings tax provision was personal to the Minnesota & Northwestern Railroad Company and could not be transferred to any other company. Neither the privilege nor the accompanying obligations are extended to successors or assigns. Morgan v. Louisiana, 93 U. S. 217; Wilson v. Gaines, 103 U. S. 417; Gulf & S. I. R. Co. v. Hewes, 183 U. S. 66; Chesapeake & O. R. Co. v. Miller, 114 U. S. 176. An immunity from taxation does not pass under the terms "property and franchises" in a deed of trust and foreclosure thereunder. Lake Drummond v. Com., 103 Va. 337, 506; City v. Rochester, 182 N. Y. 99; Norfolk & W. R. Co. v. Pendleton, 156 U. S. 667; Covington & L. T. R. Co. v. Sandford, 164 U. S. 578; Phœnix F. & M. Ins. Co. v. Tennessee, 161 U. S. 174. Under these decisions it is clear that by the weight of authority, as well as the better opinion, there is no language in the charters of the Minnesota & Northwestern Company or any of the amendments thereof, or in the act of 1883, which is sufficient to authorize the transfer or to transfer the commuted tax privilege.

In so far as chapter 83, Sp. Laws 1883, was an attempt to consent to, or provide for, the transfer of the two per cent. gross earnings tax as an irrepealable contract right, it was unconstitutional. Trask v. Maguire, 85 U. S. 391; Louisville & N. R. Co. v. Palmes,

109 U. S. 244; Keokuk & W. R. Co. v. Missouri, 152 U. S. 301; Yazoo & M. V. R. Co. v. Adams, 180 U. S. 1.

This court has never adjudged that a territorial charter exemption from taxation was appurtenant to the railroad so as to pass therewith into the ownership of a company which did not undertake to and did not construct or complete the road covered by the charter and to secure the construction of which the same was granted. The Stevens County case, 36 Minn. 467, and the Traverse County case, 73 Minn. 417.

Even though the two per cent. tax was a contract right as to the Minnesota & Northwestern Company, it did not survive the consolidations. The respondent, a foreign corporation, cannot claim any contract right, for it was subject to the constitution and other laws of Minnesota in force at the time of its organization and entry into the state. It was therefore incapable of taking or holding any irrepealable contract right to a special or limited form of taxation. Coming into the state in 1892 as a foreign corporation, the respondent could get only the franchises and privileges which the legislature was then competent and willing to give to it. At that time the legislature could not confer an irrepealable contract right to a special form of taxation. There was no other source from which such a right could be drawn. Certainly no private corporation could confer what the state, by its constitution, was prohibited from giving. Trask v. Maguire, supra; Louisville & N. R. Co. v. Palmes, supra; Mercantile Bank v. Tenn., 161 U. S. 161; Dow v. Beidelman, 125 U. S. 680; Wellman v. Chicago, 83 Mich. 592; Memphis & L. R. Co. v. Railroad Commrs., 112 U. S. 609; Chesapeake & O. R. Co. v. Miller, 114 U. S. 176; Yazoo & M. V. R. Co. v. Adams, supra; Rochester Ry. Co. v. Rochester, 205 U. S. 236.

If the power to amend the charter originally granted to the Minnesota & Northwestern Company be reserved by the charter in the state, the defendant company must be held amenable to the provisions of chapter 253, Laws 1903.

Section 9 of chapter 58, Laws 1855, was a reservation of power in the territory or future state, to repeal, amend or modify the charter of the defendant, after the expiration of the limitation of twenty years as set out in the statute. The proviso in that section does not

appertain to taxation. The year following the passage of the re-, servation of power clause, the territory of Minnesota passed an act (Laws 1856, c. 47, § 2), providing for a different rate of taxation of the company, and it does not appear that the company ever claimed any violation of its contract rights. With a view to giving meaning and application to the proviso clause, and providing for compensation in proper cases, it must follow on account of the sovereign power of the state and its ability to compensate, that: (1) The power is vested in the state to amend the charter, and (2) compensation for damages is a condition subsequent. It follows that since the passage of the reservation of power clause there can be no such thing as an irrevocable contract in the charter of the defendant company. Jackson v. Walsh, 75 Md. 304.

*Davis, Kellogg & Severance* and *A. G. Briggs,* for respondent.

The failure of the company to build the line within the period provided by the charter did not ipso facto work a forfeiture of the company's charter rights and powers. The act of 1856 was not a unilateral contract. It was an agreement complete in itself with a valid consideration moving from each side. There could be no question about an unearned immunity from taxation. It is plain from the reading of the contract that, until a forfeiture took place, the charter fixed the rights of the parties definitely and finally from that time forward. The transaction took on a contractual character when the charter was granted and accepted, and not thirty years later when the line of road was completed. If this is not so, then the Dartmouth College case might as well never have been decided.

The provisions of a charter granted to a corporation and duly accepted are not forfeited by a mere failure to comply with its conditions. There must be some affirmative act of the legislature or the judgment of a court of competent jurisdiction in the nature of a forfeiture found. By section 4 of the act of 1855, if the company failed to construct fifty miles of line between certain points within three years and the remainder within another definite period, all grants were to be void. By the act of 1856 the time was changed and extended without adding any condition of forfeiture for failure to build. Finally, in 1883 the route was changed without limitation as to time.

Under these conditions it does not seem possible to say that there is any provision in the charter for a forfeiture upon failure to construct the road; but in any event it would require an affirmative act finding and declaring the forfeiture to bring about that result. There is no question but that a grant of lands made upon conditions similar to the ones here involved could not be forfeited even after default, without an affirmative act on the part of the legislature making the grant. Minneapolis & St. C. R. Co. v. Duluth & W. R. Co., 45 Minn. 104, and cases cited. The same rule applies to any grant of rights and powers. U. S. v. Minnesota & N. W. R. Co., 1 Minn. 103 (127); Minnesota & N. W. R. Co. v. Rice, 1 Minn. 358; Application of B. E. R. Co., 125 N. Y. 434; Foster v. Fitch, 36 Conn. 236; Farnsworth v. Lime Rock, 83 Me. 440; People v. Bank, 1 Douglas (Mich.) 282; B. & O. R. Co. v. Supervisors, 3 W. Va. 319; Briggs v. Cape Cod, 137 Mass. 71; In re Petition of N. Y. Ele. R. Co., 70 N. Y. 327; Farnsworth v. Minnesota & P. R. Co., 92 U. S. 49; Chesapeake v. Baltimore, 4 Gil. & J. (Md.) 1, 127; People v. Ottawa, 115 Ill. 281.

The right in the state to forfeit a charter is one which exists, if at all, for the benefit of the state alone. It may or may not enforce the forfeiture according as it is deemed advantageous or otherwise to do so. Hence it is universally recognized that the right to forfeit may be waived. Of course the clearest possible method of effecting a waiver is by recognizing the existence of the corporation notwithstanding the default. The state of Minnesota did this and within all of the decisions such action amounted to an effective confirmation of the charter and a waiver of any ground of forfeiture which may have arisen prior to the passage of the respective acts above mentioned. Foster v. Fitch, supra; Farnsworth v. Lime Rock, supra; In re Petition N. Y. Ele. R. Co., supra; Chesapeake v. Baltimore, supra.

The contract for a commuted system of taxation was appurtenant to the line of road eventually constructed and duly passed to the respondent as the successor of the Minnesota & Northwestern Railway Company. When the territorial legislature adopted this policy the gross earnings tax was not, properly speaking, regarded as an exemption or immunity in the same sense that we use the terms to-

day. The bargain between the state and the grantee of the charter was looked upon as a fair one to both parties. It was supposed that the tax secured to the state was, as the court in the Traverse County case has said, "an ultimate and adequate return for the value of the franchises conferred, and which would, in the long run, be the equivalent of the companies' fair share of taxation." Moreover, the state was interested not merely in the construction of a road, but also in its maintenance. The company which assumed the maintenance of the road was deemed to be as much within the provision for the gross earnings system as the company which should engage in the actual work of construction. One result was as important to the state as the other. When the state entered into these contracts for a commuted system of taxation they were intended to apply to and be appurtenant to the lines affected for all time and into whosesoever hands they might come. This is the only conclusion which can be drawn from the charters themselves and from the decisions of this court construing them. The rule thus laid down by this court has stood so long and been enforced so often that it has become firmly established as a rule of property in this jurisdiction. State v. Northern Pac. R. Co., 95 Minn. 43; State v. Luther, 56 Minn. 156; State v. Moffett, 64 Minn. 292; Carson v. Smith, 5 Minn. 58, 61 (78); Loring v. Benedict, 15 Minn. 153 (198); City of Faribault v. Misener, 20 Minn. 347, 396; Ames v. Lake Superior & M. R. Co., 21 Minn. 241; Hastings & D. R. Co. v. Whitney, 34 Minn. 538; Green v. Knife Falls B. Corp., 35 Minn. 155; Willis v. Mabon, 48 Minn. 140; Funk v. St. Paul City Ry. Co., 61 Minn. 439; Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384; County of Traverse v. St. Paul, M. & M. Ry. Co., 73 Minn. 417; State v. Evans, 99 Minn. 220, 229; State Bank of Ohio v. Knoop, 16 How. 369; Powers v. Detroit, G. H. & M. R. Co., 201 U. S. 543. The federal authorities are also in accord with the state holdings on the question of transfer of the tax exemption to the successor corporations. Tennessee v. Whitworth, 117 U. S. 139; Tomlinson v. Branch, 15 Wall. 460; Humphrey v. Pegues, 16 Wall. 244; Central R. & B. Co. v. Georgia, 92 U. S. 665; Philadelphia W. & B. R. Co. v Maryland, 10 How. 376.

Under the decisions of this court, the contract for the so-called immunity was complete before the constitution was adopted and attached for all time to the road to be constructed under the original charter into whosesoever hands it might come. The legislature could not, by any act passed in 1883 or at any other time, disturb this situation. All that it was called upon to do and did accomplish by the law in question, was to authorize one company to consolidate its properties with those of another. The tax immunity was a fixed attribute of the properties themselves belonging to the first company. The legislature could not divest the properties of that attribute, and naturally did not attempt to do so. Chicago v. People, 56 Ill. App. 327; Branch v. Jesup, 106 U. S. 467. The Iowa statute (§ 2036) permitted the Minnesota and Kansas City Companies to consolidate and so did the Illinois statute (Acts 1885, §§ 36), where the word used, "purchase," is held to effect a consolidation.

The legislature of the state has no power to repeal, amend or modify the charter by changing the rate of taxation. Under the rule laid down by the supreme court of the United States in New Jersey v. Yard, 95 U. S. 104, the reserved right to repeal or amend on making compensation for damages, cannot be held to apply at all to the contract for the commuted tax provided for in the act of 1856.

BROWN, J.

This action, like that of State v. Great Northern Ry. Co., infra, page 303, 119 N. W. 202, involves the validity of chapter 253, p. 375, Laws 1903, increasing the rate of the gross earnings tax upon railroad companies in this state to four per cent. As in the Great Northern case, defendant asserts an irrepealable contract, under which it claims the right forever to discharge its tax liability by the payment of a two per cent. rate. The fixed rate claimed by the Great Northern Company was three per cent. The determination of the case involves, as in the other case, the construction of an old territorial railroad charter, the facts with reference to which are as follows:

By chapter 47, p. 121, Territorial Laws 1854, the Minnesota & Northwestern Railroad Company was duly incorporated, and authorized to construct a railroad within the limits of the territory, the line of which road in a general way was therein designated. The act

was accepted by the persons named as incorporators, but no effort was made by them to construct the road. By chapter 58, p. 148, Laws 1855, the act incorporating the company was amended by adding thereto, among other things, a provision requiring the company to construct and equip fifty miles of its road within three years after the passage of the amendment, and the entire line within six years, in default of which, the act provided, the charter of the company and all grants and rights thereby conferred "shall cease and be void." This act also contained a clause reserving to the legislature the right of amendment after the expiration of twenty years. In the original charter, and also in the amendment just mentioned, the company was required to pay into the treasury of the territory or future state seven per cent. of its net earnings. Whether this was intended as a substitute for taxes to be levied and collected in the usual way was not expressly stated. But in 1856, by chapter 47 of the laws of that year (page 76), the charter was again amended by imposing a two per cent. gross earnings tax in lieu of all other taxes. It is upon this act and the rate of taxation therein imposed that defendant relies in support of its defense. Defendant claims to have succeeded to all the rights of this old company, including the right to an irrepealable two per cent. tax contract.

The facts leading up to this asserted succession are as follows: The old company, though fully organized, wholly failed to construct its railroad within the time prescribed by its charter, and did nothing in that direction until sometime in 1884, thirty years after its organization and twenty four years after the time limited for the completion of the road. By this failure the company forfeited all its rights under the charter, and all grants thereby conferred "ceased and were void." But by chapter 83, p. 221, Sp. Laws 1883, the legislature of the state recognized the existence of the corporation, and in effect waived the default in the construction of the road by authorizing the consolidation of "its stock, franchises, rights and property with that of any other railroad company which will undertake the construction and operation of the railroad which the said Minnesota and Northwestern Railroad Company is authorized to construct and operate." Section 2 of that act amended section 7 of the original charter by authorizing the construction of a line of road

differing somewhat from that authorized by the old charter. The company was thus revived from its extended slumbers and proceeded to construct its road, and completed it some time in the year 1885. It thereafter operated the same until December of 1887, when it conveyed all its property, "contracts, rights, privileges and immunities" to the Chicago, St. Paul & Kansas City Railroad Company, a corporation created, organized, and existing under the laws of the state of Iowa. Counsel for defendant treat this transfer as a consolidation of the two companies, authorized by the act of 1883. But, as we read the documents by which the transfer was effected, the transaction took the form of an absolute and unconditional sale by the Northwestern Company. The Kansas City Company took possession of the road, and thereafter continued its operation until June, 1892, when it leased the line and all property connected therewith to the Chicago Great Western Railway Company, defendant herein, a corporation organized and existing under the laws of the state of Illinois. Subsequently, in September, 1893, the Kansas City Company conveyed the property so leased, and all contracts, franchises, and immunities to its lessee, the Great Western Company, since which time the latter has continued in the operation of the road. Again counsel claim that the conveyance by the Kansas City Company to defendant was a consolidation and authorized by law. This, however, is not important. The fact remains that the transaction resulted in an absolute transfer of the railroad property to defendant, and, inasmuch as both those companies were foreign corporations, the laws of this state would not control their dealings, and this state could neither authorize nor prohibit their consolidation. But that question in no way controls the result in this case. The old Northwestern Company, after the completion of its road in 1885, commuted its taxes by the payment of the two per cent. rate imposed by the amendment of its charter in 1856, and the succeeding roads, including defendant, have paid the same rate.

Defendant having refused to pay the rate prescribed by the statute under consideration, this action was brought to recover the amount of the increased rate. It is the contention of defendant that the terms of the old Northwestern charter fixing a two per cent. rate constituted a contract between the company and the territory or future

state, irrevocable and irrepealable, to which defendant has succeeded, and that to enforce the new rate would impair the terms of the contract in violation of both the state and the federal constitutions. Defendant does not contend that the new rate is unreasonable or unfair, or at all disproportionate to the rate paid by other taxpayers, but stands squarely upon its asserted legal right to a perpetual two per cent. rate. The trial court sustained this view, ordered judgment for defendant, and the state appealed.

The charter of this road has never heretofore been before the court for construction. No question has ever been raised relative to the rights of defendant or its predecessors upon the subject of taxation; and the construction of the old charter and amendatory acts, and the right of the state to change the rate of taxation thereby imposed, are before us for the first time. Most of the questions involved were presented in the Great Northern case, where they were fully considered and disposed of adversely to the contentions of defendant. We there held, among other things, that the charter provisions of the old Minnesota & Pacific Company, upon which the Great Northern Company relied, did not constitute an irrepealable contract which passed unimpaired to the successors of that company; and, further, that the gross earnings tax system first came into legal existence in this state by force of the constitutional amendment of 1871 (Laws 1871, p. 41, c. 18), and that it then became subject to the reserved right of the state to amend or repeal the same as public interests might justify or require. The language of the charter under consideration, in so far as it imposes this form of taxation, is for all practical purposes the same as that construed in the Great Northern case, and the conclusions there reached fully apply at bar, and we adopt and follow them.

The conclusion is in no way affected, nor defendant's rights in any way enlarged or extended, by chapter 83, p. 221, Sp. Laws 1883. The original company, the Minnesota & Northwestern, failed to construct the road within the time limited by its charter, and remained inactive for thirty years. Under the language of the charter, all its rights therefore "ceased and were void," and the charter could have been forfeited by appropriate action of the state. But no proceedings were taken for that purpose, and it may be conceded that

the act of 1883 was a recognition of the legal existence of that company at that time and a waiver of the right to declare a forfeiture. But such waiver and recognition were clearly subject to the then existing constitutional mandate prohibiting the granting of special privileges on the subject of taxation. It was also subject to the constitutional amendment of 1871, which provided, in effect, that all gross earnings statutes might be changed or amended by a vote of the people, under the authority of which the statute in question is valid as to defendant. In so far as the legislature may be said by the act of 1883 to have intended or attempted to confer upon the Minnesota & Northwestern Company a perpetual two per cent. rate, when all other roads were taxed three per cent., it violated the constitutional mandate of equality in taxation and its action was void. The legislature could no more grant this special privilege by the revival of an old corporation than it could confer a one per cent. privilege upon an entirely new company.

Neither are the rights of the parties, as urged by defendant, to be construed as of the date the original charter was granted, but, on the contrary, as of the date of the revival of the practically defunct company and the waiver of the right of the state to declare a forfeiture of the charter, namely, at the time of the passage of the act of 1883. At that time the legislature could do one of two things, declare a forfeiture, or waive the right, as it did, and continue the authority of the company to proceed and construct its road; but this was necessarily subject to the then existing constitutional restrictions pertinent to the subject of taxation. Trask v. Maguire, 18 Wall. 391, 21 L. Ed. 938; Louisville & N. R. Co. v. Palmes, 109 U. S. 244, 3 Sup. Ct. 193, 27 L. Ed. 922; Keokuk & W. Ry. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450; Yazoo & M. R. Co. v. Adams, 180 U. S. 41, 45, 21 Sup. Ct. 256, 45 L. Ed. 415. At that time the right of the state to change the rate was clear. Stearns v. Minnesota, 179 U. S. 223, 21 Sup. Ct. 73, 45 L. Ed. 162.

Again, the act of 1883 is wholly silent upon the subject of taxation, and, though a consolidation with other lines was authorized, the right to assign or transfer the commuted system of taxation at an irrepealable rate was not expressly or impliedly granted, and did

not pass to the successors of the original company. As stated in a note to Adams v. Yazoo & M. V. R. Co., 60 L. R. A. 33, 99, the general rule deducible from all the authorities is that an exemption from taxation, belonging to a corporation, is a privilege altogether personal to the grantee, "incapable of transference to another save by a specific enabling law couched in explicit language apt to the purpose." No such language, nor any language indicative of an intention to confer the right of alienation, is found either in the original charter or in the revival act of 1883. An unchangeable rate of taxation did not therefore pass to the successors of the Northwestern Company. Morgan v. Louisiana, 93 U. S. 217, 23 L. Ed. 860; Wilson v. Gaines, 103 U. S. 417, 26 L. Ed. 401; Gulf & S. I. R. Co. v. Hewes, 183 U. S. 66, 22 Sup. Ct. 26, 46 L. Ed. 86; Chesapeake & O. Ry. Co. v. Miller, 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121; Phœnix F. & M. Ins. Co. v. Tennessee, 161 U. S. 174, 16 Sup. Ct. 471, 40 L. Ed. 660; City v. Rochester, 182 N. Y. 99, 74 N. E. 953, 70 L. R. A. 773. The language of the act of 1883 authorizing the Northwestern Company to "consolidate its stock, franchises, rights and property" with any other road, conceding that the transaction by which the defendant succeeded to the rights of the old road amounted to a consolidation, did not, within the authorities cited, include the right to transfer an irrepealable right to a two per cent. tax.

Counsel for the state advance several other reasons in support of the contention that the state possesses the right to increase the rate, one of which is found in the reserved right of amendment incorporated in the Northwestern charter by the act of 1855. That act, which amended the original charter, expressly provided [section 9] that the "legislature of the territory or future state of Minnesota may repeal, amend or modify this act and the act to which this is amendatory from and after the expiration of twenty years from the date of the passage of this act. Provided, that compensation be made to said company for all damages sustained thereby." It is insisted that this reservation conferred upon the state the power to increase the tax rate of this road, independently of other grounds urged, while counsel for defendant contend to the contrary. We find it unnecessary to consider this or any other of the points urged by the state, not already passed upon. What has been said disposes

of the case and sustains the right of the state to increase the tax, and further consideration of the other questions would unnecessarily prolong the opinion.

Our conclusions are that chapter 253, p. 375, Laws 1903, is valid as to defendant, and that the state is entitled to judgment against it for the increased tax.

The judgment appealed from is therefore reversed, and final judgment ordered in this court for the amount due the state, as shown by the complaint.