216 U.S. 234
 30 S.Ct. 353
 54 L.Ed. 460
 CHICAGO GREAT WESTERN RAILWAY COMPANY, Plff. in Err.,
v.
STATE OF MINNESOTA.
 No. 377.
 Argued and submitted November 8, 1909.
 Decided February 21, 1910.
 
 This suit, like that of the Great Northern R. Co. v. Minnesota, just decided [216 U. S. 206, 54 L. ed. ——, 30 Sup. Ct. Rep. 344] involves the constitutionality, as applied to the plaintiff in error, of chapter 253, General Laws of Minnesota of 1903, requiring every railroad company owning or operating any line of railway in that state to pay an annual tax, commencing with 1905, equal to 4 per cent of the gross earnings derived from the operation of such line within the state.
 The gross earnings received by the defendant company during the year 1905 amounted to $1,248,890.93, 4 per cent of which is $49,959.24. The state alleges that the defendant refused to pay and has paid only $24,979.62, leaving a balance of $24,979.62, for which amount the state asked judgment.
 The court of original jurisdiction sustained the company's contention that it was liable only to a sum equal to 2 per cent of its gross earnings, and gave judgment for the defendant. That court was of opinion that a certain statute of the territory of Minnesota, approved March 1st, 1856 (Laws of 1856, chap. 47), constituted a valid contract between the territory and state of Minnesota, on one side, and the Minnesota & Northwestern Railroad Company, on the other, and fixed the lawful rate of taxation to be paid by that company at 2 per cent of its gross earnings; that said contract was never forfeited or lost by the company, but was transferred and passed, first to the Chicago, St. Paul, & Kansas City Railway, and subsequently to the defendant herein; and that the statute of 1903, fixing the tax at 4 per cent of the company's gross earnings, was unconstitutional when applied to the defendant herein. The judgment was reversed by the supreme court of Minnesota, with directions to enter judgment in favor of the state for the full amount stated in its complaint. 106 Minn. 300, 119 N. W. 211.
 The facts and issues are so fully and accurately set forth by the supreme court of Minnesota that we take from its opinion the following statement of the case: 'This action, like that of State v. Great Northern R. Co. 106 Minn. 303, 119 N. W. 202 [filed herewith], involves the validity of chapter 253, p. 375, General Laws 1903, increasing the rate of the gross earnings tax upon railroad companies in this state to 4 per cent. As in the Great Northern Case, defendant asserts an irrepealable contract, under which it claims the right forever to discharge its tax liability by the payment of a 2 per cent rate. The fixed rate claimed by the Great Northern Company was 3 per cent. The determination of the case involves, as in the other case, the construction of an old territorial railroad charter, the facts with reference to which are as follows:
 'By chap. 47, p. 121, Territorial Laws 1854, the Minnesota & Northwestern Railroad Company was duly incorporated and authorized to construct a railroad within the limits of the territory, the line of which road, in a general way, was therein designated. The act was accepted by the persons named as incorporators, but no effort was made by them to construct the road. By chap. 58, p. 148, Laws of 1855, the act incorporating the company was amended by adding thereto, among other things, a provision requiring the company to construct and equip 50 miles of its road within three years after the passage of the amendment, and the entire line within six years, in default of which, the act provided, the charter of the company and all grants and rights thereby conferred 'shall cease and be void.' This act also contained a clause reserving to the legislature the right of amendment after the expiration of twenty years. In the original charter, and also in the amendment just mentioned, the company was required to pay into the treasury of the territory or future state 7 per cent of its net earnings. Whether this was intended as a substitute for taxes to be levied and collected in the usual way was not expressly stated. But in 1856, by chap. 47 of the laws of that year (p. 76), the charter was again amended by imposing a 2 per cent gross earnings tax in lieu of all other taxes. It is upon this act and the rate of taxation therein in imposed that defendant relies in support of its defense. Defendant claims to have succeeded to all the rights of this old company, including the right to an irrepealable 2 per cent tax contract. The facts leading up to this asserted succession are as follows: The old company, though fully organized, wholly failed to construct its railroad within the time prescribed by its charter, and did nothing in that direction until some time in 1884, thirty years after its organization, and twenty-four years after the time limited for the completion of the road. By this failure the company forfeited all its rights under the charter, and all grants thereby conferred 'ceased and were void.' But by chap. 83, p. 221, Special Laws, 1883, the legislature of the state recognized the existence of the corporation, and in effect waived the default in the construction of the road by authorizing the consolidation of 'its stocks, franchises, rights, and property with that of any other railroad company which will undertake the construction and operation of the railroad which the said Minnesota & Northwestern Railroad Company is authorized to construct and operate.' Sec. 2 of that act amended § 7 of the original charter by authorizing the construction of a line of road differing somewhat from that authorized by the old charter. The company was thus revived from its extended slumbers and proceeded to construct its road, and completed it sometime in the year 1885. It thereafter operated the same until December of 1887, when it conveyed all its property, 'contracts, rights, privileges, and immunities,' to the Chicago, St. Paul, & Kansas City Railroad Company, a corporation created, organized, and existing under the laws of the state of Iowa. Counsel for defendant treat this transfer as a consolidation of the two companies, authorized by the act of 1883. But, as we read the documents by which the transfer was effected, the transaction took the from of an absolute and unconditional sale by the Northwestern Company. The Kansas City Company took possession of the road, and thereafter continued its operation until June, 1892, when it leased the line and all property connected therewith to the Chicago Great Western Railway Company, defendant herein, a corporation organized and existing under the laws of the state of Illinois. Subsequently, in September, 1893, the Kansas City Company conveyed the property so leased, and all contracts, franchises, and immunities, to its lessee, the Great Western Company, since which time the latter has continued in the operation of the road. Again, counsel claims that the conveyance by the Kansas City Company to defendant was a consolidation and authorized by law. This, however, is not important. The fact remains that the transaction resulted in an absolute transfer of the railroad property to defendant, and inasmuch as both those companies were foreign corporations, the laws of this state would not control their dealings, and this state could neither authorize nor prohibit their consolidation. But that question in no way controls the result in this case. The old Northwestern Company, after the completion of its road in 1885, commuted its taxes by the payment of the 2 per cent rate imposed by the amendment of its charter in 1856, and the succeeding roads, including defendant, have paid the same rate.
 'Defendant having refused to pay the rate prescribed by the statute under consideration, this action was brought to recover the amount of the increased rate. It is the contention of defendant that the terms of the old Northwestern charter, fixing a 2 per cent rate, constituted a contract between the company and the territory or future state, irrevocable and irrepealable, to which defendant has succeeded, and that to enforce the new rate would impair the terms of the contract, in violation of both the state and the Federal Constitutions. Defendant does not contend that the new rate is unreasonable or unfair, or at all disproportionate to the rate paid by other taxpayers, but stands squarely upon its asserted legal right to a perpetual 2 per cent rate. The trial court sustained this view, ordered judgment for defendant, and the state appealed.
 'The charter of this road has never heretofore been before the court for construction. No question has ever been raised relative to the rights of defendant or its predecessors upon the subject of taxation; and the construction of the old charter and amendatory acts, and right of the state to change the rate of taxation thereby imposed, are before us for the first time. Most of the questions involved were presented in the Great Northern Case, where they were fully considered, and disposed of adversely to the contentions of defendant. We there held, among other things, that the charter provisions of the old Minnesota & Pacific Company, upon which the Great Northern Company relied, did not constitute an irrepealable contract which passed unimpaired to the successors of that company; and further, that the gross earnings tax system first came into the legal existence in this state by force of the constitutional amendment of 1871 (Laws 1871, chap. 18, p. 41), and that it then became subject to the reserved right of the state to amend or repeal the same, as public interests might justify or require. The language of the charter under consideration, in so far as it imposes this form of taxation, is, for all practical purposes, the same as that construed in the Great Northern Case, and the conclusions there reached fully apply at bar, and we adopt and follow them.'
 Messrs. Frank B. Kellogg, Cordenio A. Severance, A. G. Briggs, Robert E. Olds, and John Barton Payne for plaintiff in error.
 Messrs. George W. Peterson and George T. Simpson for defendant in error.
 Mr. Justice Harlan delivered the opinion of the court:
 
 
 1
 The rights of the plaintiff in error depend primarily upon the construction of the act incorporating the Minnesota & Northwestern Railroad Company (Territorial Laws, 1854, chap. 47, the amendatory act of 1855, chap. 58, the amendatory act of 1856, chap. 47, and the act of 1883, Special Laws, chap. 83). That act of 1856 imposed a 2 per cent gross earnings tax in lieu of all other taxes. The supreme court of the state observed that until the present case arose it had never had occasion to construe the charter of the original company, and the acts amendatory thereof, nor determine whether the state could change the rate of taxation thereby imposed. It was of opinion that the question of taxation here involved was substantially the same as the one involved in Great Northern R. Co. v. Minnesota [216 U. S. 206, 54 L. ed. ——, 30 Sup. Ct. Rep. 344]. That court consequently adjudged, upon the authority of that case, that the defendant, as a successor in interest of the Minnesota & Northwestern Railroad Company, could not claim the benefit of an irrepealable, unchangeable contract relating to taxation that passed or could, under the state Constitution, have passed, unimpaired from the old company to a successor in interest, or that prevented the state from enacting the statute of 1903, chapter 253, General Laws of 1903. Without repeating what was said in the former case, we hold, upon the grounds set forth in the opinion in that case, that the state court rightly held that the state was not prevented by contract from passing the gross earnings tax law of 1903, and it properly reversed the judgment of the court of original jurisdiction, with directions to enter judgment in favor of the state for the amount claimed in its complaint. The judgment herein must be affirmed.
 
 
 2
 It is so ordered.