# NORFOLK AND WESTERN RAILROAD COMPANY *v.* PENDLETON.

## SAME *v.* SAME.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

Nos. 153, 359. Submitted January 14, 1895. — Decided March 4, 1895.

The fifth section of the charter from the State of Virginia to the Atlantic, Mississippi and Ohio Railroad Company, which vested it "with all the rights and privileges conferred by the laws of this Commonwealth, and

subject to such as apply to railroad corporations generally, subjected it to state laws regulating rates, notwithstanding provisions of exemption in statutes organizing other previous companies to whose rights it succeeded; and the Norfolk and Western Railroad Company, when it became possessed of the property and rights of the Atlantic, Mississippi and Ohio Railroad Company, took them subject in like manner to such laws.

In the absence of express statutory direction, or of an equivalent implication by necessary construction, provisions, in restriction of the right of the State to tax the property or to regulate the affairs of its corporations, do not pass to new corporations succeeding, by consolidation or by purchase under foreclosure, to the property and ordinary franchises of the first grantee.

A mortgage of the franchises and property of a corporation, made in the exercise of a power given by statute, confers no right upon purchasers at a foreclosure sale to exist as the same corporation, but, at most, to reorganize as a new corporation subject to the laws existing at the time of the reorganization.

THE case is stated in the opinion.

*Mr. William J. Robertson, Mr. W. H. Bolling,* and *Mr. Joseph I. Doran* for plaintiff in error.

*Mr. John J. A. Powell* for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

Edmund Pendleton brought two suits in the Circuit Court of Wythe County, Virginia, against the Norfolk and Western Railroad Company to recover statutory penalties for charging him more than the rates prescribed by law.

On behalf of the defendant it was not denied that the sums charged were in excess of the rates fixed by the general law of Virginia, dated January 14, 1853, c. 57, Acts of 1852–3, p. 62, regulating tolls upon railroads, but it was claimed that the defendant railroad company, as the legal successor of certain other companies, whose charters empowered them to fix their own charges, was not subject to the provisions of that statute.

The trials resulted in judgments against the railroad company, which were on error taken to the Supreme Court of Appeals of the State of Virginia, from whose judgments,

affirming those of the trial court, writs of error were sued out of this court.

The record discloses the following facts : On March 11, 1837, the legislature of Virginia passed an act entitled " An act prescribing certain regulations for the incorporation of railroad companies," in the twenty-fourth section whereof it was provided that it should be lawful for the president and directors of the company to charge certain rates of toll for the transportation of persons, not exceeding six cents per mile ; for the transportation of goods, produce, merchandise, and other articles, except gypsum and lime, not exceeding eight cents per ton per mile; for the transportation of gypsum and lime, not exceeding four cents per ton per mile ; and for the transportation of the mail such sum as they may agree for ; and in the twenty-fifth section it was provided that when the net profits shall amount to a sum equal to the capital stock expended, with six per cent per annum interest thereon, then the tolls which the president and directors shall be entitled to demand and receive on their railroad shall be fixed and regulated from time to time by the board of public works, or by such agent or agents as may be appointed by the legislature for that purpose, so as to make them sufficient to pay a net profit of six per cent per annum on the capital stock, etc. ; and in the thirty-fifth section it was provided that any part of any charter or act of incorporation granted agreeably to the provisions of the act " shall be subject to be altered, amended, or modified by any future legislation as to them shall seem proper, except so much thereof as prescribes the rate of compensation or tolls for transportation." Act of March 11, c. 118, Laws of 1836-7, 101, 110.

On March 24, 1848, and while the act of 1837 was in force, the legislature of Virginia passed an act incorporating the Lynchburg and Tennessee Railroad Company, by the second section whereof it was provided that whenever twelve hundred shares of stock shall have been subscribed, the subscribers, their executors, administrators, and assigns, should be declared to be a body politic and corporate, such should be " subject to all the provisions of the act prescribing certain general regulations

for the incorporation of railroad companies, passed March 11, 1837, and the supplements thereto;" and by the third section it was provided that "the tolls of said company shall be regulated and prescribed by the president and directors of said company : *Provided, however,* That if at any time hereafter the rates of toll and transportation shall enable the president and directors, after payment of all necessary expenses, and after setting apart a fair and reasonable sum for renewal and repairs, to divide more than fifteen per cent on their capital stock invested, then the legislature may regulate and reduce the tolls and transportation so as to enable the company to divide fifteen per cent and no more."

Under these acts a railroad extending from Lynchburg to Bristol, a point on the line between the States of Virginia and Tennessee, was built and operated by the Virginia and Tennessee Railroad Company, from 1855, the date of its completion, till November 12, 1870. The Atlantic, Mississippi and Ohio Railroad Company was incorporated under the provisions of an act of the general assembly of the State of Virginia, passed June 17, 1870, and entitled "An act to authorize the formation of the Atlantic, Mississippi and Ohio Railroad Company." Laws of 1869–70, c. 143, p. 181.

The avowed object of the organization of this company was to acquire the property and franchises of the Norfolk and Petersburg Railroad Company, whose railroad extended from Norfolk, Virginia, to Petersburg; of the Southside Railroad Company, owning a railroad between Petersburg and Lynchburg ; and of the Virginia and Tennessee Railroad Company, whose road extended from Lynchburg to Bristol.

It was provided in the fifth section of the act that "the said Atlantic, Mississippi and Ohio Railroad Company shall be a body corporate and politic, vested with all the rights and privileges conferred by the laws of this Commonwealth, and subject to such as apply to railroad corporations thereof generally ; " and in the fourteenth section, that "as the stock of the said Norfolk and Petersburg, Southside, Virginia and Tennessee, and Virginia and Kentucky Railroad Companies, (the several companies authorized by the act to subscribe to

and be absorbed by the Atlantic, Mississippi and Ohio Railroad Company,) respectively, shall be absorbed by the said Atlantic, Mississippi and Ohio Railroad Company, as contemplated in the terms of this act, the said company shall become absolutely vested with all the rights of franchise and of property which belong to the same."

On November 12, 1870, the organization of the new company was finally completed, and thereafter the said line of railroad from Norfolk to Bristol was operated, under one general management, by the said company, until in March, 1876, a bill was filed in the United States Circuit Court for the District of Virginia by trustees named in certain mortgages executed by the Atlantic, Mississippi and Ohio Railroad Company to foreclose the same. By a decree in this case the works, property, and franchises of the Atlantic, Mississippi and Ohio Railroad Company were sold to the Norfolk and Western Railroad Company, and to that company the same were conveyed by deed of May 3, 1881, in conformity with the provisions of the code of Virginia.

Under the foregoing state of facts it is contended that the Norfolk and Western Railroad Company, as a legal successor to the previous companies, is entitled to fix and regulate its rates for transportation until the profits of the traffic shall enable the president and directors to divide more than fifteen per cent per annum, which has never happened, and that to enforce the rates prescribed by the general law would deprive the said company of its legal rights and would impair the obligation of the contract alleged to subsist between the State of Virginia and the company.

The record discloses that the Supreme Court of Appeals disposed of this contention as follows: "The argument is that the provisions of the charter of the Lynchburg and Tennessee Railroad Company constituted a contract with the company, the obligation of which cannot be impaired by subsequent legislation, and moreover, that by the fourteenth section of the charter of the Atlantic, Mississippi and Ohio Railroad Company, which was granted in 1870, it was provided that the last-mentioned company should, among other things, be

vested with all the rights of franchise of the Virginia and Tennessee and the Lynchburg and Tennessee Railroad Companies, and that the defendant company succeeded to those rights as the successor of the Atlantic, Mississippi and Ohio Railroad Company. This argument, however, overlooks the fifth section of the act incorporating the Atlantic, Mississippi and Ohio Railroad Company, which must be read in connection with the said fourteenth section, whereby it was provided that the company should be subject to all the laws of the Commonwealth which apply to the railroad corporations generally, and the act of 1853 is, as we have seen, such a law. The defendant company, as the successor by purchase of the Atlantic, Mississippi and Ohio railroad, is, of course, bound by this provision, and is consequently subject to the provisions of the act last above mentioned. In other words, it succeeded to the right to operate a railroad, but subject, as to the regulation of its tolls, to the general laws of the Commonwealth, for the right of a State to reasonably limit the amount of charges by a railroad company for the transportation of persons and property within its own jurisdiction, unless restrained by some contract in the charter, or unless what is done amounts to a regulation of foreign or interstate commerce, is well settled and not disputed."

These views of the Supreme Court of Appeals, construing the railroad laws of the State, and pronouncing on their legal effect, seem to us to be sound and to properly dispose of the question. If the orignal companies did have a contract with the State whereby, until a certain amount of money should be earned, they should have the right to fix and regulate their charges, it is clear that the Atlantic, Mississippi and Ohio Railroad Company accepted their charter with a distinct provision that the company should be subject to the general laws of the Commonwealth, one of which was the very law, then and still in force, which prescribed the tariff of rates enforced in the present suits. It is equally obvious that the Norfolk and Western Railroad Company, the plaintiff in error, by becoming the legal successor to the Atlantic, Mississippi and Ohio Railroad Company, was brought within the scope of

those general laws, and cannot successfully claim immunity under the charters of the previous companies.

It may be added, perhaps unnecessarily, that even apart from the clause which in terms subjected the Atlantic, Mississippi and Ohio Railroad Company, and consequently the Norfolk and Western, as its successor, to the general law prescribing rates, that there was no clause or provision in the original charters which can be interpreted as necessarily meaning that subsequent corporations, organized under later laws, can assert a valid succession to immunities and privileges like those in question. We have frequently held that, in the absence of express statutory direction, or of an equivalent implication by necessary construction, provisions, in restriction of the right of the State to tax the property or to regulate the affairs of its corporations, do not pass to new corporations succeeding, by consolidation or by purchase under foreclosure, to the property and ordinary franchises of the first grantee; that a mortgage of the franchises and property of a corporation, made in the exercise of a power given by statute, confers no right upon purchasers at a foreclosure sale to exist as the same corporation, but to reorganize as a new corporation subject to the laws existing at the time of the reorganization. This we have stated to be a salutary rule of interpretation, founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the grant construed *strictissimi juris*. *Morgan* v. *Louisiana*, 93 U. S. 217; *Wilson* v. *Gaines*, 103 U. S. 417; *Chesapeake & Ohio Railway* v. *Miller*, 114 U. S. 176.

The judgments of the Supreme Court of Appeals are

*Affirmed.*