## ALASKA NORTHERN RY. CO. v. MUNICIPALITY OF SEWARD.

(Circuit Court of Appeals, Ninth Circuit.  February 21, 1916.)

### No. 2581.

1. TAXATION ⬅⬆203—EXEMPTIONS—CONSTRUING AGAINST EXEMPTIONS.

Exemptions from taxation are not favored, and will not be allowed, unless it is made clearly to appear that such was the statutory intent; every reasonable doubt being resolved in favor of the taxing power.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 343; Dec. Dig. ⬅⬆203.]

2. MUNICIPAL CORPORATIONS ⬅⬆966—POWERS OF MUNICIPAL CORPORATIONS—STATUTORY PROVISIONS.

Act Aug. 24, 1912, c. 387, 37 Stat. 512, after granting to the Legislature of Alaska, thereby created, various powers and imposing various limitations, restrictions, and conditions, not only upon the Legislature, but upon municipal corporations, provides in section 9 (Comp. St. 1913, § 3536) that no tax shall be levied for territorial purposes in excess of 1 per cent. upon the assessed valuation of property therein, nor shall any incorporated town or municipality levy any tax, for any purpose, in excess of 2 per cent. of the assessed valuation of property within the town, provided that Congress reserves the exclusive power for five years to fix and impose any tax or taxes upon railways or railway property in Alaska. *Held*, that this prohibits municipal corporations, as well as the territorial Legislature, from imposing any tax on railways or railway property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2045–2061; Dec. Dig. ⬅⬆966.]

Gilbert, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Third Division of the Territory of Alaska; Fred M. Brown, Judge.

Proceeding by the Municipality of Seward to sell property of the Alaska Northern Railway Company for delinquent taxes. Judgment for the petitioner, and the defendant brings error. Reversed and remanded, with directions.

S. O. Morford, of Seward, Alaska, for plaintiff in error.

J. Lindley Green, of Seward, Alaska, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

ROSS, Circuit Judge. [1] The question in this case is whether that portion of the property of the plaintiff in error railway company that is situated within the limits of the municipality of Seward, territory of Alaska, and which is used and necessary for the purposes of the railway, is by statute of the United States exempted from taxation by the defendant in error. That such exemptions are not favored, and will not be allowed unless it is made clearly to appear that such was the

statutory intent, is well settled; every reasonable doubt being resolved in favor of the taxing power.

It must be admitted that the property upon which the taxes in question were levied was, exempt from taxation while in the hands of the predecessor in interest of the plaintiff in error, viz. the Alaska Central Railway Company, since the fifth section of the act of Congress entitled "An act to extend the time for the completion of the Alaska Central Railway Company, and for other purposes" (Act June 30, 1906, c. 3921, 34 Stat. 798) expressly declares:

"Said company shall be exempt from license tax and tax on its railway and railway property during the period of construction and for five years thereafter: Provided, that the total period of exemption shall not exceed ten years from the time of the passage of this act."

Did that immunity or privilege follow the property into the hands of the Alaska Northern Railway Company? In the case of Norfolk & Western Railway v. Pendleton, 156 U. S. 667, 673, 15 Sup. Ct. 413, 415 (39 L. Ed. 574) the Supreme Court held that, in the absence of express statutory directions or of an equivalent implication by necessary construction, provisions in restriction of the right of the state to tax the property or to regulate the affairs of its corporations did not pass to new corporations succeeding by consolidation or by purchase under foreclosure to the property and ordinary franchises of the first grantee, saying:

"We have frequently held that, in the absence of express statutory direction, or of an equivalent implication by necessary construction, provisions, in restriction of the right of the state to tax the property or to regulate the affairs of its corporations, do not pass to new corporations succeeding, by consolidation or by purchase under foreclosure, to the property and ordinary franchises of the first grantee; that a mortgage of the franchises and property of a corporation, made in the exercise of a power given by statute, confers no right upon purchasers at a foreclosure sale to exist as the same corporation, but to reorganize as a new corporation subject to the laws existing at the time of the reorganization. This we have stated to be a salutary rule of interpretation, founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirements of the grant construed strictissimi juris. Morgan v. Louisiana, 93 U. S. 217 [23 L. Ed. 860]; Wilson v. Gaines, 103 U. S. 417 [26 L. Ed. 401]; Chesapeake & Ohio Railway v. Miller, 114 U. S. 176 [5 Sup. Ct. 813, 29 L. Ed. 121]."

It is urged on behalf of the plaintiff in error that the equivalent implication of the intent of Congress that the exemption from taxation of the railway property here in question should pass to the successors in interest of the Alaska Central Railway Company, necessarily results from the true construction of the act of June 30, 1906, which, in extending the time for the completion of its railway also in terms declared that "the powers of said company are enlarged" in certain particulars—that is to say, by the first section of the act the time for the filing by the company of a map of the definite location of its road and the time for the completion of its construction was extended; by the second section there was granted to the company certain described lands for terminal purposes upon certain prescribed terms and conditions; by the third section there was granted to the company the

right to purchase at $1.25 an acre a certain reserved tract of land; by the fourth section the company was granted the right to locate its right of way along the navigable waters of Alaska under certain prescribed conditions; the fifth section is the exemption clause above quoted; and by the sixth section Congress reserved the right to alter, amend, or repeal the act.

[2] Whether or not the foregoing *enlargement* of the powers that had theretofore been conferred on the Central Railway Company, taken in connection with the provision exempting that company from "tax on its railway and railway property during the period of construction and for five years thereafter," provided that the total period of such exemption should not exceed ten years from the time of the passage of the act, and in connection with the well-known fact that the legislation was designed to aid the building of a railroad in a new, distant, and sparsely settled region, manifests a clear intent on the part of Congress that the exemption from taxation should follow the property during the period specified into whosesoever hands it should pass, and thus take the case out of the principle announced by the Supreme Court in the cases above referred to, we find unnecessary to decide, for the reason that we are of the opinion that by its subsequent act of August 24, 1912 (37 Stat. 512), Congress reserved to itself the exclusive power for five years from the date of that act to fix and impose any and all taxes upon railways and railway property in Alaska, thereby necessarily repealing or suspending, as the case may be, by implication, any inconsistent provision of any character.

It must be remembered that in all of its legislation with respect to Alaska Congress was dealing with a section of the country the development of which is necessarily attended with hard conditions. Its long winter climate, and the smallness of its population, necessarily make the building of railroads a costly and difficult matter, which fact no doubt entered into the consideration of the lawmakers in enacting the exemption clause found in section 9 of the last-mentioned act, which is entitled "An act to create a legislative assembly in the territory of Alaska, to confer legislative power thereon, and for other purposes."

It is urged on behalf of the defendant in error that the sole purpose of the exemption clause contained in section 9 of that act was aimed at the Legislature thereby provided for, and was solely intended to prohibit that legislative body from imposing any tax on railways or railway property in the territory, and the court below so held. We are unable to so construe the language of the statute, which, after granting to the Legislature thereby provided for various powers and imposing various limitations, restrictions, and conditions, not only upon the Legislature, but also upon the municipal corporations of the Territory, expressly declared, among other things, as follows:

"All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessments shall be according to the actual value thereof. No tax shall be levied for territorial purposes in excess of one per centum upon the assessed valuation of property therein in any one year; nor shall any incorporated town or municipality levy any tax, for any purpose, in excess of two per centum of the assessed

valuation of property within the town in any one year: Provided, that the Congress reserves the exclusive power for five years from the date of the approval of this act to fix and impose any tax, or taxes upon railways or railway property in Alaska."

Authorizing, as Congress did, the Legislature to levy taxes for territorial purposes up to 1 per centum upon the assessed valuation of property situated within the territory in any one year, and authorizing any incorporated town or municipality thereof to levy any tax for any purpose up to 2 per centum of the assessed valuation of property within the town in any one year, Congress expressly declared that it reserved to itself "the exclusive power for five years from the date of the approval of this act to fix and impose any tax or taxes upon railways or railway property in Alaska." That the necessary effect of that clear and unambiguous language is to prohibit the levy of any tax upon such property during the specified period by any other power does not, we think, admit of doubt.

The judgment of the court below is reversed, and the cause remanded, with directions to dismiss the petition, at the petitioner's cost.

GILBERT, Circuit Judge (dissenting). In order to determine what is meant by the last proviso of section 9 of the act of August 24, 1912, it is essentially important to consider, not only the general purpose of that act, but the situation as it then existed as to the taxation of railroads in Alaska. At that time and for many years prior thereto railroad property had been regularly and annually taxed by Congress and by municipal corporations. Under Act June 6, 1900, c. 786, § 29, 31 Stat. 331, Congress had imposed on railroads an annual license tax of $100 per mile upon each mile operated. Under Act April 28, 1904, c. 1778, § 4, 33 Stat. 531, which gave municipal corporations power to tax for school and municipal purposes, not to exceed 2 per centum of assessed valuation upon all real and personal property, with certain exceptions not pertinent here, municipal corporations, including the defendant in error in this action, had regularly taxed railroad property within their corporate limits. Such was the situation when the act of 1912 was passed. At that time, as it appears from the history of the passage of the bill, there were 500 miles of railroads in Alaska. The act of 1912 was entitled:

"An act to create a legislative assembly in the territory of Alaska, to confer legislative power thereon, and for other purposes."

The only "other purposes" mentioned in the act are the creation of a railroad commission and the codification and compilation of the laws applicable to the territory of Alaska. All the remainder of the act is devoted to the creation of a legislative assembly and the definition of its powers. In section 9, which contains limitations of the legislative power, is found the provision on which depends the decision of the case at bar. It is as follows:

"No tax shall be levied for territorial purposes in excess of one per centum upon the assessed valuation of property therein in any one year; nor shall any incorporated town or municipality levy any tax, for any purpose, in excess of two per centum of the assessed valuation of property within the town, in

any one year: Provided, that the Congress reserves the exclusive power for five years from the date of the approval of this act to fix and impose any tax or taxes upon railways or railway property in Alaska."

There is nowhere in the act any provision which concerns municipal corporations, or which affects their rights, other than that which is found in the language just quoted. The provision therein prohibiting the levying of a municipal tax in excess of two per centum of the assessed valuation of property is clearly a limitation solely upon the powers of the Legislature which is created by the act. By that act power had been given to the Legislature sufficiently broad to include the power to change or repeal the provisions contained in the act of Congress of 1904 in regard to municipal corporations, so that, unless restrained, the Legislature might authorize the levying of a municipal tax to exceed 2 per centum of the assessed valuation of property. It was to prevent such possible legislation that the limitation was inserted in section 9, and both the limitations as to taxes for territorial purposes and taxes for municipal purposes were limitations imposed upon the power of the Legislature only. That being the obvious purpose of the act, it becomes clear also that the proviso is a restriction only upon the power of the Legislature of Alaska. In other words, Congress thereby denied to the Legislature and reserved to itself for the period of five years the right, which it then had and was exercising, to impose a tax upon railroads operated in the territory, but left undisturbed the power of municipalities to tax railroad property within their limits.

It is a cardinal rule of construction that a proviso in a statute affects and relates only to the paragraph in which it is found, or to which it is annexed, unless a different intention on the part of the legislative body is clearly disclosed by the words used. In Minis v. United States, 15 Pet. 423, 445, 10 L. Ed. 791, Mr. Justice Story said:

"The office of a proviso, generally, is either to except something from the enacting clause, or to qualify or restrain its generality, or to exclude some possible ground of misinterpretation of it, as extending to cases not intended by the Legislature to be brought within its purview."

In White v. United States, 191 U. S. 545, 24 Sup. Ct. 171, 48 L. Ed. 295, the court said:

"It is undoubtedly true that in congressional legislation provisos have been included in statutes which are really independent pieces of legislation, but this is a misuse of the usual purpose and effect of a proviso, which is to make exception from the enacting clause, to restrain generality and to prevent misinterpretation."

In Lewis' Sutherland, Statutory Construction, § 352, it is said:

"The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter."

Not only is the use of the word "provided" an expression of the intention of Congress to withhold something out of that which in general terms had just been granted, but the further words, "the Con-

gress reserves," furnish additional evidence of that intention. To reserve is to withhold something from the whole matter covered by the general terms of a grant, and thereby to make the concurrent grant less than it otherwise would be.

It is also the rule that exemptions from taxation are not favored by law. This was held in Yazoo & Mississippi R. R. Co. v. Adams, 180 U. S. 1, 22, 21 Sup. Ct. 256, 45 L. Ed. 415: In Wright v. Central of Georgia Ry., 236 U. S. 674, 682, 35 Sup. Ct. 471, 473 (59 L. Ed. 781), Mr. Justice Hughes, after reviewing the decisions of the Supreme Court on the subject, summed up their purport by saying:

"In view of the supreme importance of the taxing power of the state, every doubt must be resolved in favor of its continuance."

In Memphis, etc., R. R. v. Railroad Commissioners, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 837, the court said:

"This salutary rule of interpretation is founded upon an obvious public policy, which regards such exemptions as in derogation of the sovereign authority and of common right, and therefore not to be extended beyond the exact and express requirement of the grants, construed strictissimi juris."

The construction which the majority of this court give to the proviso results in the repeal by implication of the provision of the act of 1904 which gave municipalities the power to tax railroad property. All presumptions are against the legislative intention to repeal an older statute by a later one by a mere implication. This court in Mills v. Smith, 177 Fed. 652, 101 C. C. A. 278, held that, where two acts of different dates cover the same subject-matter, the later will operate as a repeal of the earlier only where that intention is plainly manifest and unmistakable, and that it is the duty of a court to adopt any reasonable construction which will give effect to both. And it is evident that Congress itself did not understand that the effect of the act of 1912 was to deprive municipalities of any of the powers that had been conferred upon them by the act of 1904. This is made evident by the fact that, under the authority given by section 19 of the act of 1912 to codify, compile, publish, and annotate all of the laws of the United States applicable to Alaska, the compilation made and thereafter accepted by the concurrent resolution of both houses of Congress contains, in the form in which it was as originally enacted, the provision which gave to municipalities power to levy taxes for school and municipal purposes upon "all real and personal property."