342 Mich. 673 (1955)
71 N.W.2d 212
In re DEARBORN CLINIC & DIAGNOSTIC HOSPITAL.
CITY OF DEARBORN
v.
STATE TAX COMMISSION.
Docket No. 34, Calendar No. 46,412.
Supreme Court of Michigan.
Decided June 29, 1955.
Dale H. Fillmore, Corporation Counsel, and B. Ward Smith and James A. Broderick, Assistants Corporation Counsel, for plaintiff.
Thomas M. Kavanagh, Attorney General, Edmund E. Shepherd, Solicitor General, and Daniel J. O'Hara and T. Carl Holbrook, Assistants Attorney General, for defendant.
*676 CARR, C.J.
Dearborn Clinic & Diagnostic Hospital was incorporated in 1933 as a nonprofit corporation, under the provisions of the Michigan general corporation act.[*] The case at bar involves the right of the city of Dearborn to tax real estate of said corporation used for hospital purposes. Apparently the property has been so used for several years past without being taxed. In 1954 it was placed on the assessment roll, and such action was confirmed by the city board of review. Thereupon the owner appealed to the State tax commission, asserting that the assessment was unauthorized.
On receipt of the complaint the parties were notified that a review of the city's action would be held in Detroit on July 20, 1954, at which time consideration would be given to the appeal. On the date specified no witnesses were produced by either the city or the owner of the property. Discussion was had with reference to the claim of exemption, representatives of the city contending that such claim was not well-founded, that the assessment of the property was lawful, and that the commission, if it took any action in the premises at all, should enter an order approving the action of the city officials concerned. A brief was submitted setting forth the arguments advanced in opposition to the claim of the property owner. It appears also that the commission had before it certain papers bearing on the organization and operation of the Dearborn Clinic & Diagnostic Hospital, herein referred to for convenience as the Hospital.
On October 25, 1954, the commission issued its order reciting that "after investigation and after giving due consideration to all reports and statements submitted," at the hearing of July 20th, it had determined that the property in question was exempt. *677 From such order the city of Dearborn, on leave granted by this Court, has taken an appeal in the nature of certiorari. It is claimed that the commission lacked authority to strike the property from the assessment roll and that, if it had jurisdiction in the premises, such action was not warranted by the showing made. It is insisted further in this connection that the commission should have taken testimony of witnesses for the purpose of developing the factual situation.
On behalf of appellant it is urged that statutory provisions defining the powers and duties of the State tax commission do not in express terms grant authority to it to strike from assessment rolls property deemed exempt from taxation. Appellee directs attention to pertinent provisions of the general property tax law indicating that only properties liable to assessment for taxation may properly be placed on assessment rolls, and that it is the duty of the State tax commission "To have and exercise general supervision over the supervisors and other assessing officers of this State, and to take such measures as will secure the enforcement of the provisions of this act." (CL 1948, § 211.150 [Stat Ann 1950 Rev § 7.208].) Subdivision 3 of the section cited also makes it the duty of the commission:
"To receive all complaints as to property liable to taxation that has not been assessed or that has been fraudulently or improperly assessed, and to investigate the same, and to take such proceedings as will correct the irregularity complained of, if any is found to exist."
It is contended that if property exempt from taxation is placed on the assessment roll it must be deemed to be "improperly assessed" and that, in effect, the commission is given specific authority to correct such action.
*678 The authority of the commission is further indicated in CL 1948, § 211.152 (Stat Ann 1950 Rev § 7.210), which makes assessment rolls subject to inspection by the commission or by any member or authorized representative thereof. If such inspection indicates that property has been omitted, or improperly described, or that "individual assessments have not been made in compliance with law," the commission is authorized to issue an order for a review of the assessment roll in which such defects are claimed to exist. It is significant that the statute refers to the proceeding as a "review", thereby indicating the nature and scope of the functions of the commission.
In keeping with other provisions of the statutes relating to taxation, CL 1948, § 209.104 (Stat Ann 1950 Rev § 7.634) provides that "The State tax commission shall have general supervision of the administration of the tax laws of the State." Without referring specifically to other pertinent provisions, we think the intent is clearly manifest on the part of the legislature to give to the commission broad powers of review in matters of taxation. Such was the conclusion expressed in Board of State Tax Commissioners v. Quinn, 125 Mich 128. The Court also concluded that the commission functions as a "board of review," saying in part (p 131):
"Had the tax law, including the amendments, been passed as a whole in the first instance, we should find no difficulty in saying that the intention was discernible, and that the term `board of review' was used as descriptive of the character of the board, and meant the board of final review in that particular instance, and that the term was intended to apply to the local board or the State board, as the circumstances might require. There is no reason for applying a different rule of construction where the apparent inconsistency arises between the original act *679 and the amendatory sections, for all is to be considered as 1 act for the purpose of construction, under the well-settled rule."
As before noted, the board of review of the city of Dearborn confirmed the assessment of the hospital property. It is apparently not questioned that it might have refused to take such action, and have stricken said property from the roll. In this connection the provisions of CLS 1954, § 211.29 (Stat Ann 1950 Rev § 7.29) are in point. Said section, after providing for the meeting of the board of review, directs that the members thereof:
"shall correct all errors in the names of persons, in the descriptions of property upon such roll, and in the assessment and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said roll comply with the provisions of this act. The roll shall be reviewed according to the facts existing on the tax day. The board shall not add to the roll any property not subject to taxation on the tax day nor shall it remove from the roll any property subject to taxation on said day regardless of any change in the taxable status of such property since such day."
Obviously correcting an assessment roll so that it may comply with the law may involve striking therefrom assessments on tax-exempt property. The authority to eliminate property that should not be assessed is clearly indicated by the language quoted. If, as declared by this Court in the Quinn Case, supra, the State tax commission is to be regarded as the final board of review, the conclusion follows that it possesses at least the powers granted to local boards.
In Township of Beaverton v. Lord, 235 Mich 261, the plaintiff sought to tax certain flowage easements within its boundaries. The owner of such easements *680 appealed to the board of State tax commissioners, to which board the present State tax commission is the successor, claiming that such assessment was unauthorized. The member of the board hearing the matter agreed with the owner and removed the property from the roll. Thereupon suit was started in circuit court to enjoin such action. This Court held that under the circumstances equity had jurisdiction to grant relief, and disposed of the case on the merits by holding that the easements were subject to taxation in plaintiff township and that, in consequence, the order striking such property from the roll was improper. It does not appear that any question was raised in the case by the parties or either of them, or by this Court, as to the jurisdiction of the board of State tax commissioners to strike from the roll property deemed not legally taxable in the township. It is perhaps of some significance that the acceptance of jurisdiction by the board was not challenged or criticised.
In Board of State Tax Commissioners v. Kohler, 193 Mich 420, the Court considered the authority given by provisions of the general tax law to the board of State tax commissioners, pointing out that it was the duty of said board to exercise general supervision over assessing officers and "to take such measures as will secure the enforcement of the provisions of the act." It was further stated that (pp 427, 428):
"By subdivision 3 of said section 150, it is made the duty of the board to receive all complaints as to property liable to taxation that has not been assessed, or that has been fraudulently or improperly assessed, and to investigate the same, and to take such proceedings as will correct the irregularity complained of, if any is found to exist.
"It is too narrow a view to say that the words `such investigation,' found in section 152, refer simply *681 to the `inspection' of the rolls; it is more reasonable to hold that they refer to all the other avenues open to investigation. The words `inspection' and `investigation' are not synonymous; and it is more reasonable to say that the words `such investigation' refer to the investigation, and examination of witnesses and documents referred to in the preceding sections, as above noted."
In Hudson Motor Car Co. v. City of Detroit, 282 Mich 69 (113 ALR 1472), it was held with reference to the right of review by the State tax commission:
"After tax rolls have been passed upon by local boards of review and are properly certified by them no change may be made therein by the local board of review or by any local assessing officer but the State tax commission has a right to review the tax rolls after final review by the local board and such review by the commission may be either special or general." (Syllabus 16.)
Questions of statutory construction analogous to that in the case at bar have arisen in other States under provisions of tax laws similar to those of Michigan. In Kane County Board of Equalization v. State Tax Commission, 88 Utah 219 (50 P2d 418), the defendant commission on appeal to it by a taxpayer set aside and cancelled an assessment made by local officials. After pointing out provisions of the statutes relating to taxation giving to the defendant commission general supervision over the administration of the tax laws of the State and over local officials in the performance of their duties, it was said (pp 226, 227):
"Since the commission has general supervision over the tax laws of the State and over those charged with the enforcement of those laws, and has the power on appeal to make such correction or change in the order of the county board of equalization as it *682 may deem proper, it must necessarily follow that it is authorized to cancel, vacate, or change an assessment when, upon a proper showing, it has been determined that the assessment should be so cancelled, vacated, or changed."
Likewise, in City of Newark v. Fischer, 3 NJ 488 (70 A2d 733, 21 ALR2d 280), the question arose as to the authority of a county board of taxation to cancel an assessment which said board found to be improper. In commenting on the situation, it was said (p 492):
"The county board had jurisdiction of the subject matter and pursuant to RS 54:3-22, as amended[**] was vested with the power to `revise and correct the assessment in accordance with the true value of the taxable property.' This power necessarily includes the right to cancel the assessment entirely where the property is determined to be not taxable."
Further discussion of the question of jurisdiction is not required. It is fundamental that statutes must be construed to carry out the purpose of the legislature. It is apparent that it was intended to give to the State tax commission broad powers of review and of supervision over the administration of the general property tax law. Under pertinent provisions of the statutes of this State relating to taxation, some of which are specifically mentioned above, we conclude that the commission had jurisdiction to entertain the complaint made to it in this case and to enter an order based on the matters submitted to it on the hearing and on the results of its investigation.
As before noted, the order of the commission from which the city of Dearborn has appealed indicated that it was made after due consideration of reports and statements submitted at the hearing, and also *683 after investigation. The duty to investigate was specifically imposed on it by the statute (CL 1948, § 211.150 [Stat Ann 1950 Rev § 7.208]). The scope of the investigation in the instant case does not appear from the record but it may be assumed that it was intended to furnish to the commission information that it required in determining the matter before it. In the case of In re Application of Consolidated Freight Co., 265 Mich 340 (4 PUR NS 397), the Court had before it the propriety of an order made by the Michigan public utilities commission (now Michigan public service commission). The question at issue and the views of the Court with reference to it are suggested by the following quotation from the opinion (pp 352, 353):
"The principal contention asserted by appellants on this appeal is that the evidence before the utilities commission did not show the requisite public convenience or necessity for issuing a permit to appellee. On application for a permit the statute requires the commission to:
`find and determine that public convenience and necessity require the exercise of such privilege, and said commission shall refuse to issue any certificate if, upon investigation of all existing highway transportation facilities and hearing, it shall appear to the satisfaction of the commission that public convenience and necessity do not require such additional facilities as applied for.' PA 1931, No 312, § 5.[***]
"From this statutory provision it appears that the commission acts not only upon the testimony taken at the hearing but it may make an investigation on its own account and consider the results of such investigation in granting or withholding the permit. Needless to say a question of fact was presented to and determined by the commission. It is equally *684 clear that determination of such issue based in whole or in part upon `investigation' by the commission cannot be reviewed in this Court upon a record which, as in the instant case, contains no information as to what the commission's investigation disclosed. But entirely apart from this anomalous situation, on review by certiorari this Court has no power to substitute its judgment for that of the commission on issues of fact."
See, also, People, ex rel. Little, v. St. Louis Merchants Bridge Co., 291 Ill 95 (125 NE 752).
By stipulation of the parties, the record in this case consists of the record of the commission, certified as correct by its secretary, which was filed with this Court in connection with the application for leave to appeal. It appears therefrom that the communication embodying the appeal to the commission from the decision of the Dearborn board of assessors contained a statement indicating that in 1934 the State tax commission had determined that the property of the Hospital was tax exempt. It does not appear that the correctness of this statement was questioned before the commission, or that it is now disputed. The complaint, filed on a blank furnished by the commission, further set forth that the ownership of stock entitled the owner to take part in the management but carried no dividend or proprietary rights, and that in case of dissolution the assets would be conveyed to a "similar charitable trust."
The articles of incorporation of the Hospital set forth in article 2 thereof the purposes of its organization as follows:
"To acquire, construct, complete, maintain, and conduct a hospital for the care and relief of indigent and other sick, infirm, or injured persons, and the treatment of maternity cases; and to provide dental treatment to the aforesaid persons; the study and teaching of the cause, nature, prevention, and *685 cure of various diseases, dissemination of knowledge relating thereto and the purchase, leasing, erection, and equipment and maintenance of all buildings and laboratories necessary or incidental thereto upon land situated in the city of Dearborn, Wayne county, Michigan."
It was also provided in the articles that the corporation should be financed by the charging of fees to patients able to pay and the acceptance of contributions from benefactors.
The record contains the 1954 annual report of the Hospital to the Michigan corporation and securities commission. Among other statements therein, the report avers that during the year covered by it the nature of the business conducted was "hospital  nonprofit." The question in the report as to whether interest or dividends were ever paid on capital stock was answered in the negative. It thus appears that the commission at the time of the hearing and the making of the subsequent order had before it, in the form disclosed by the record, certain claimed facts which it had full authority to check as a part of the investigation authorized by the statute.
If the hospital property had been treated as exempt from taxation for a period of 20 years, such fact was entitled to consideration in determining its character and use. In Wright v. Central of Georgia Railway Company, 236 US 674 (35 S Ct 471, 59 L ed 781), the appellee company sought to enjoin the collection of certain taxes on the ground that they were not properly assessed against it, its claim being that it did not actually own the property in question. In affirming a decree in favor of the plaintiff railway company, it was said (p 678):
"To decide whether these taxes are such an unjustified exaction we must turn to the legislation of the State, bearing in mind that the practical construction given to the law for nearly half a century *686 is strong evidence that the plaintiff's contention is right. Wright v. Georgia R.R. & Banking Co., 216 US 420, 426 (30 S Ct 242, 54 L ed 544); Temple Baptist Church v. Georgia Terminal Co., 128 Ga 669, 680 (58 SE 157)."
The claim that the Hospital's real estate is exempt from taxation rests on CLS 1954, § 211.7 (Stat Ann 1953 Cum Supp § 7.7). The 4th subdivision of said section reads as follows:
"Fourth, Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of world war veterans incorporated under the laws of this State with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated. Also charitable homes of fraternal or secret societies. Also real estate not to exceed 160 acres of land owned by any boy or girl scout organization, while occupied by them solely for the purpose for which they were incorporated or established. Also real estate, with the buildings and other property thereon, owned and occupied by any nonprofit trust and used for hospital or public health purposes."
It may be noted that the final sentence of the provision above quoted was added by PA 1952, No 54, presumably for the purpose of clarifying the status of hospitals with reference to taxation.
The exemption from taxation of the property of hospitals and like organizations has been considered by this Court in prior cases. In Michigan Sanitarium & Benevolent Ass'n v. City of Battle Creek, 138 Mich 676, in sustaining the right of the plaintiff association to recover taxes that it had paid under protest, it was held that it had sufficiently shown that it had not paid dividends by proof that none of its funds had gone to its members except in the form of wages or salaries. The claim of the city *687 to the effect that plaintiff did not occupy the property for purposes specified in the act under which it was incorporated was answered by statements indicating the nature of plaintiff's operations and by declaring that it was not incumbent on plaintiff to show the impossibility of collection of charges from patients receiving free treatment. The Court concluded that the plaintiff corporation occupied the property "for the care or relief of indigent or other sick or infirm persons" and that it was sufficiently charitable in character to entitle it to exemption from taxation, the charges collected for services not being in excess of sums needed for successful maintenance. This decision was cited with approval in Auditor General v. R.B. Smith Memorial Hospital Ass'n, 293 Mich 36. See, also, In re Petition of Auditor General, 226 Mich 170.
On the record before us we cannot say that the State tax commission was in error in striking the property of the Hospital from the assessment rolls. In addition to the facts that the record indicates were brought out on the hearing, it may be assumed that it had further information based on the statements and arguments presented to it. It also had the results of the investigation that its order indicated was made. Such order may not be set aside on the theory that there was no proper and adequate support therefor.
The action of the commission is affirmed, but without costs, questions of statutory construction being involved.
BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.
NOTES
[*] PA 1931, No 327, as amended (CL 1948, § 450.1 et seq. [Stat Ann § 21.1 et seq.]).
[**] See NJSA, 1954 Cum Supp § 54:3-22.  REPORTER.
[***] This act was repealed. See provisions relative to certificate in the motor carrier act. CL 1948, § 476.1 et seq. (Stat Ann § 22.534 et seq.).  REPORTER.